## WHEATON v. UNITED STATES.
### No. 12371.

Circuit Court of Appeals, Eighth Circuit.
Feb. 25, 1943.

Harry P. Atwater, of Sturgis, S. D. (Atwater & Helm, of Sturgis, S. D., and C. A. Wilson, of Hot Springs, S. D., on the brief), for appellant.

George Philip, U. S. Atty., of Rapid City, S. D. (John T. Heffron, Asst. U. S. Atty., of Deadwood, S. D., and Leo P. Flynn, Asst. U. S. Atty., of Sioux Falls, S. D., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The appellant, upon his plea of not guilty to an indictment charging him with having used the mails in furtherance of a scheme to defraud (18 U.S.C.A. § 338, 35 Stat. 1130), was tried and convicted. He made a motion to set aside the verdict and for a new trial on the ground of misconduct of the jury. The motion was denied, judgment was entered, and he has appealed from the judgment.

The indictment was in conventional form and contained eleven counts, each based upon a separate use of the United States mails in furtherance of the scheme to defraud, which was fully described in the first count and was incorporated only by reference in the subsequent counts. The appellant entered a plea of not guilty to the indictment, and was tried in June, 1942. The jury returned a verdict of guilty upon counts four, five, six, seven and eight, and acquitted the appellant upon the other counts.

No question is raised as to the indictment, as to the sufficiency of the evidence to sustain the verdict, or as to the instructions of the court. The appellant's attack upon the judgment is based exclusively upon the refusal of the court to set aside the verdict and grant a new trial because one of the bailiffs in charge of the jury communicated with the jury with reference to the case after it had been submitted and before a verdict had been agreed upon. The appellant's motion to set aside the verdict and for a new trial was based upon this alleged misconduct of the jury and was supported by the affidavits of five jurors, Langloss, Heston, Korte, Haley, and Keeler.

The affidavit of Langloss states, in substance:

That while the jury was deliberating and after it had been out about twenty-three hours, and at about 3.30 P. M. on June 18, 1942, the foreman asked Thomas L. Slattery, one of the bailiffs in charge of the jury, to deliver to the trial judge a letter written by the foreman stating that the jury could not agree upon a verdict. That the bailiff took this letter, and upon his return stepped "just inside" the jury room and stated that the judge said he could do nothing for the jury. "That in answer to questions from the various members of the jury, the bailiff, Tom Slattery, then proceeded to explain that each count of the indictment was really a separate indictment, and that the jury would have to vote on each count and determine if Wheaton was guilty or not guilty on each count, and that they would have to vote first on count one, and then vote on the other counts separately; that the said bailiff also told the members of said jury that if they didn't agree on a verdict, they would have to stay out until ten o'clock the next day. It took the bailiff about twenty-five or thirty minutes to explain it all to us." That after the explanation made by the bailiff, "the jury seemed to understand the matter much better, and agreed upon a verdict at about 7:30 o'clock P. M." That "I wish to add that I never at any time thought, nor do I now think that Wheaton was guilty of any of the crimes claimed against him."

The affidavit of Heston states: "That * * * after the jury had been out for many wearisome hours and when they were all about worn out with fatigue about three o'clock in the afternoon of June 18th we requested the bailiff to ask the judge to either turn us loose or give us further instructions for we were hopelessly deadlocked and had been for about twenty hours as I now recall it. Upon his return he came into the jury room and in answer to our questions as to how we must proceed he stated the judge would not give any more information and that Judge Wyman said he couldn't do any more for us

and that he wouldn't excuse us—that we would have to stay longer and upon questioning the bailiff told us that these counts should be worked out one at a time and that we could vote guilty on one and not guilty on another. He was in there quite a little time. There was several that talked to him quite a little. There were several that talked to him quite a little more than I did. I didn't talk to him so much as some of the others. I feel that if the bailiff hadn't come in there and talked a lot that we would never have reached a verdict for we were deadlocked for some twenty hours and he gave us an idea that changed the minds of some and I feel that the boys after they thought that they had to stay there until another morning just didn't want to take it for they were all in."

The affidavit of Keeler states: "That on Thursday, June 18th, 1942, about 3:30 P. M. the jury was hopelessly deadlocked and I never at any time thought Wheaton was guilty of any of the crimes charged against him. I do not yet think he was guilty of any crime whatever. We would have been deadlocked yet I think unless the Deputy United States Marshal and bailiff, Tom Slattery, had not come in and spent about half an hour talking with the various jurors. I argued with Tom Slattery because he seemed to think Wheaton should be guilty on count one and I figured Wheaton was not guilty on any count. I finally agreed to the verdict of guilty on the five counts because I felt the judge's charge to the jury relieved my mind of a lot of pressure as it seemed to me his charge was for us to bring in a verdict of not guilty in view of the facts as presented to the jury. It seemed to me that then we had virtually brought in a not guilty verdict in that way for by nullifying count one and counts two and three I figured there was little left to the other charges. I argued with Slattery on the first paragraph on each count and Slattery said: 'Well if you take that out there won't be anything left' and that is exactly what I figured myself. The Bailiff was in there quite some little time and discussed about all the time with any and all who cared to argue it with him. The bailiff then told us we must bring in a verdict right away or we would have to stay out until ten o'clock the next day and that was more than any of us wanted to stand for and it had a great deal to do with our verdict for I know we would have still been deadlocked if it hadn't been for Slattery's talk as far

as I was concerned. I still wish to repeat that I feel Hal D. Wheaton was not guilty of any crime whatever as charged in this case."

The joint affidavit of Korte and Haley states:

"That the matter of a plurality of counts in the indictment was confusing to the minds of the jurors, and the jurors, or at least some of them, entertained the view that they could not properly arrive at a verdict in the case unless their opinion was unanimous with reference to all the different counts in the indictment, and that during the afternoon of Thursday, June 18, the jurors, primarily because of their confusion with reference to the matter of the different counts, believed they could not agree on a verdict and, therefore, the jurors by their foreman requested the bailiff, who had them in charge, to inform the trial judge that the jury were of the opinion that they could not agree.

"That the bailiff presently returned with the information that the trial judge felt that the jury ought to make a further effort to reach an agreement and that at that time the bailiff came into the jury room and had some discussion with the jurors, and more particularly with the foreman of the jury, and informed the foreman of the jury in the presence of the other jurors with reference to the matter of the different counts in the indictment and explained to them that in arriving at their verdict they could treat each count separately and arrive at their verdict as to each count without reference to their views as to any other count and return their verdict accordingly whether or not they were unanimous in their opinion with reference to all counts; that affiants supposed that the bailiff was authorized by the trial judge to assist the jurors by giving them such information and explanation.

"That the bailiff made no attempt whatever to state what the verdict of the jury ought to be with reference to any count, or to influence the jurors, or any of them, with reference to any count but did explain to them the complete separability of the counts and did explain to them that they could consider and pass upon each count separately and then return such verdict as they might ultimately arrive at by so doing, and that the explanation thus made by the bailiff cleared up the confusion that had previously existed in the minds of the jurors, or some of them, and

that presently thereafter they did arrive at a verdict, which they had previously been unable to do, which verdict they subsequently returned into court and which became and was the verdict of the jury in said case."

In resistance to the motion of the appellant, the Government filed the affidavit of the bailiff, Slattery. This affidavit shows that the case was submitted to the jury in the afternoon of June seventeenth; that on the morning of June eighteenth the jury requested further instructions from the court and submitted written questions to the judge; that the jury was brought into the courtroom and with the consent of counsel for the parties the instructions of the court were reread to the jury and an additional instruction given to it; that the jurors then returned to their jury room to resume their deliberations; and

"That at about 3:30 that afternoon [June 18] the foreman came to the door of the jury room and stated to affiant, 'We have agreed to disagree and we want you to tell the judge.' That affiant then went to the judge and reported the statement made by the foreman of the jury to him. That about half an hour later, Mr. S. B. Weston, Court Bailiff, told affiant that the judge said to leave the jury out and let them continue their deliberation; that affiant then returned to the door of the jury room and informed the foreman of the judge's decision.

"That about a half hour thereafter the foreman came to the door of the jury room and asked this affiant if he would go down and ask the judge some more questions. That affiant stated that he did not like to do so, but would if the jury wanted him to, but that they should reduce their questions to writing; that almost immediately thereafter, affiant was handed a piece of paper by the foreman of the jury, with some writing on it, which affiant did not read, but which he took to Judge Wyman and delivered it to him. That Judge Wyman then told affiant in substance that the jury were bothered with the question of whether they had the right to vote on any of the counts of the indictment until they had disposed of Count One, and the judge stated to affiant they had the right to discuss and vote on any count of the indictment and return a verdict on each count separately, that affiant does not exactly recall whether the judge told him so to inform the jury, but that he did return to the jury room and told the foreman that the jury had the right to consider the separate counts of the indictment in any order they pleased and to return a verdict on the various counts 'whatever way they pleased.'

"That affiant said no more than this to the jury and did not talk to them after that until about six o'clock when the foreman came to the door and said in substance that the jury wanted to be taken to supper. That they were taken to supper by affiant and the other bailiff and shortly after being returned to the jury room they informed affiant that they had arrived at a verdict."

Upon the affidavits of the five jurors and the counter-affidavit of the bailiff and without further proof or offer of proof, the motion was submitted to the trial court for determination. In denying the appellant's motion, the court made the following statement:

"I might say that insofar as my personal knowledge of the matter under consideration is concerned, the facts are as follows:

"After the jury had been deliberating on the case for about twenty-four hours, Mr. Slattery, one of the bailiffs in charge of the jury came to my chambers and handed me a note signed by the foreman of the jury, which stated that the jury had agreed to disagree. I informed Mr. Slattery that such an agreement did not constitute a verdict, and that I could not release the jury at that time, but that they should make further effort to reconcile their differences and agree upon a verdict.

"Some time later Mr. Slattery brought me another note from the foreman, which in substance was an inquiry as to whether or not the jury had to arrive at a verdict as to Count Number One before they could consider or act upon the other counts in the indictment. I stated in substance to the bailiff that I had explained to the jury in the instructions that they should consider each count of the indictment separately and find the defendant guilty or not guilty as to each count. I then stated that it made no difference in what order the various counts were considered, that the jury could take up the several counts in any order they desired, so long as they determined the guilt or innocence of the defendant as to each count.

"I do not remember that I expressly told Mr. Slattery to tell the jury what I had said to him, but I fully understood and intended that he should do so, because the

information requested by the jury had no bearing whatever upon the facts or merits of the case, but was confined exclusively to the method or procedure of the jury itself, I did not feel that it was necessary to send for the defendant and counsel and have the jury brought into court before answering their question.

"I am unable to find in the record anything to indicate that the defendant suffered any prejudice by Mr. Slattery's communications with the jury, and I am confident that he did no more than what he was in effect directed to do by myself.

"The Motion for a New Trial is therefore denied."

■■ The trial court, in answering the jury's question as to whether it could consider other counts before arriving at a verdict on count one, should not have done so by informing the bailiff that it made no difference in what order the various counts were considered, leaving it to the bailiff to convey that information to the jury. Although the question related to the method in which the jury might proceed in considering the various counts of the indictment, and not to the merits of the case, it should have been answered in open court in the presence of the appellant and the attorneys for the parties, and made a matter of record, so that no doubt could have arisen as to what question the jury asked the court and as to what answer was made by the court. Compare, Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 81, 82, 39 S.Ct. 435, 63 L.Ed. 853; Little v. United States, 10 Cir., 73 F.2d 861, 864, 96 A.L.R. 889. A bailiff is a mere custodian of the jury and should not be used or permitted by the court to convey to the jury any instructions or directions as to the merits of the case under consideration or as to how the jury may consider the issues presented.

The failure of the trial court to have the jury brought to the courtroom for further instructions is understandable. The record shows that, prior to the occurrence upon which the motion of the appellant is based, the jury had heard the court's instructions twice, and that these instructions contained the following statements:

"In considering the case you will take each one of the counts up separately and pass upon it separately. * * * As I have indicated to you, you are to take up each count of the indictment separately and pass upon the guilt or innocence of the defendant as to that particular count. * * * And in event you find the defendant guilty as to one or more counts in the indictment, and not guilty as to one or more counts in the indictment, you will use the third form [of verdict] and fill in the number of the counts wherein you find him guilty and those wherein you find him not guilty."

It thus appears that the jury had been told six times that the counts of the indictment were to be considered separately. It is a fair inference that what confused the jury was the fact that only in the first count was the alleged scheme to defraud fully described. Apparently some of the jurors were of the opinion that, until they had agreed as to the guilt or innocence of the defendant upon the first count, they could not consider other counts in which the description of the scheme was incorporated only by reference to the first count.

■■ The issues raised by the motion for a new trial were: (1) What communications were made to the jury by the bailiff? (2) Were they prejudicial or harmless? These issues were to be determined by the trial court from competent evidence. In so far as the affidavit of any juror attempted to impeach the verdict of the jury, or related to a matter resting in his personal consciousness or to the motives or influences which affected the jury's deliberations, the affidavit was incompetent, and it was only competent to indicate the existence of extraneous interference with the jury's deliberations. Mattox v. United States, 146 U.S. 140, 148, 149, 13 S.Ct. 50, 36 L.Ed. 917; Hyde v. United States, 225 U.S. 347, 383, 384, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; McDonald v. Pless, 238 U.S. 264, 267-269, 35 S.Ct. 783, 59 L.Ed. 1300; United States v. Dressler, 7 Cir., 112 F.2d 972, 979. The affidavits of the jurors, submitted by the appellant, were not proof of the facts recited by the affiants. Glasser v. United States, 315 U.S. 60, 87, 62 S.Ct. 457, 86 L.Ed. 680. The counter-affidavit of the bailiff stood in no different position, but it constituted a concession by the Government that the bailiff had communicated with the jury with reference to the case. Admittedly, then, there had been "communications, possibly prejudicial" (Mattox v. United States, 146 U.S. 140, 150, 13 S.Ct. 50, 53, 36 L.Ed. 917) between the bailiff

and the jury. The appellant contended that the communications were prejudicial, and the Government contended that they were harmless.

The law is that communications, relative to a case on trial, between jurors and third persons, or witnesses, or the officer in charge of the jury, are absolutely forbidden, and, if it appears that such communications have taken place, a presumption arises that they were prejudicial, but this presumption may be rebutted by evidence showing the communications to have been harmless. In Chambers v. United States, 237 F. 513, at page 521, this Court said that the weight of authority sustained the rule that, "where a motion for a new trial is made on account of communications to the jury during their deliberations, there is a rebuttable legal presumption that they were prejudicial to the moving party, that this presumption may in some cases be overcome by evidence, and that where competent evidence is offered it is the duty of the trial court to hear and consider it, and that when it does so, and decides the motion thereon, its decision is discretionary, and is reviewable by a federal appellate court for abuse of discretion only." See and compare Mattox v. United States, 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917; Holmgren v. United States, 217 U.S. 509, 521, 522, 30 S.Ct. 588, 54 L. Ed. 861, 19 Ann.Cas. 778; Little v. United States, 10 Cir., 73 F.2d 861, 865, 96 A.L.R. 889. In the Chambers case it was recognized that in some jurisdictions statements made to the jury by an officer in charge of it, relative to the case under consideration, are conclusively presumed to be prejudicial. This Court declined to follow that rule and has since recognized a presumption of prejudice arising from such a communication to be a rebuttable one. Sunderland v. United States, 8 Cir., 19 F.2d 202, 212.

It will be noted that in the Chambers case the issues raised by the motion were tried and the trial court's determination of them was based upon competent evidence. In the instant case, there was no trial of the issues, but merely a submission of the motion upon affidavits, and the only basis for the court's denial of the appellant's motion is the affidavit of the bailiff, with such corroboration as is found in some of the jurors' affidavits submitted by the appellant. The Government, having admitted that a communication between the bailiff and the jury had taken place, had the burden of establishing by competent evidence that the communication was in fact harmless. The affidavit of the bailiff was not competent proof that the communication was harmless, and was not a sufficient basis for the determination of the trial court that no prejudice had resulted. We think that the denial of the motion was, under the circumstances, an abuse of discretion.

The motion and affidavits presented by the appellant cast suspicion upon the fairness of the trial. If the truth is that the challenged conduct of the bailiff was or may have been prejudicial, a new trial should be granted. On the other hand, if the bailiff only repeated to the jury what the jury had already been told six times by the court, the Government should not be subjected to the trouble and expense of retrying this case.

The issues arising upon the motion for a new trial have not yet been competently tried. It is apparent that the parties and the trial court did not realize the necessity of having evidence adduced. We think that, under the circumstances, this Court would not be justified in reversing the judgment and ordering the district court to grant a new trial. To afford that court an opportunity to exercise a proper discretion, it is ordered that the judgment entered upon the verdict of the jury be vacated and that the case be remanded to the district court with directions to set aside the order denying a new trial, to rehear the appellant's motion, and, after a rehearing, to determine whether a new trial should be granted, or whether it should be denied and judgment re-entered upon the verdict. Compare, Paine v. St. Paul Union Stockyards Co., 8 Cir., 35 F.2d 624, 628.

Judgment vacated and case remanded with directions to rehear motion for a new trial.