**Harry Russell BRIGGS, Appellant,**

**v.**

**The UNITED STATES of America, Appellee.**

**No. 12241.**

United States Court of Appeals Sixth Circuit.

April 22, 1955.

such claims to be false or fraudulent. Sec. 287, Title 18 U.S.Code. Following a verdict of guilty under Counts 1 and 2 and not guilty under Counts 3, 4, and 5, he was sentenced to two years imprisonment and a $1,000 fine upon each of the two counts, the sentence under the second count to run concurrently with the first count. Following denial of his motion for a new trial, this appeal was taken.

Appellant operated the Tennessee Mechanical Institute of Memphis, which was a school for training veterans in automobile mechanics, under contract with the Veterans Administration. Count 1 charged him with filing with the Veterans Administration at Nashville, Tennessee a false claim in the amount of $40.34 for instruction furnished a veteran, James A. Jones, which claim showed that Jones attended classes at the institute for 126 hours during the period of August 1 through 31, 1952, when the appellant well knew that he only attended classes for approximately 12 hours during said period. Count 2 charged a similar false claim in the amount of $40.34 for instruction furnished Jones, which claimed that Jones attended classes for 126 hours during the period from September 1 through 30, 1952, when the appellant well knew that such was not so. The 3rd, 4th and 5th Counts charged false claims for instruction furnished a veteran named Floyd Wiley for the periods of August, September and October 1952.

The institute had an enrollment of approximately 462 students. During the period from 1947 to 1952 it prepared and sent to the Veterans Administration a minimum of from 25,000 to 30,000 invoices. The Government's evidence showed the filing of the invoices in question and the fact that they were false. Appellant's contention was that Wiley and Jones entered the school and thereafter discontinued attending classes, that he had no knowledge of their discontinuing attendance at the school, that he personally did not make out the invoices, and that although the invoices were

---

L. E. Gwinn, Memphis, Tenn., for appellant.

James L. Roberts, Nashville, Tenn. (Fred Elledge, Jr., Nashville, Tenn., on the brief), for appellee.

Before SIMONS, Chief Judge; MILLER and STEWART, Circuit Judges.

MILLER, Circuit Judge.

The appellant, Harry Russell Briggs, was indicted under a 5-count indictment for presenting claims to a department or agency of the United States, knowing

incorrect there was no knowledge on his part of their falsity or any intention on his part to defraud the Government.

Goldie Scott, Secretary of the Institute, made out the invoices. The Government, in presenting its case, relied upon the testimony of Goldie Scott and John Thomas, another employee of the institute, to prove knowledge and intent upon the part of the appellant. However, these witnesses did not testify in accordance with statements previously made to FBI agents, with the result that the Government sought to impeach their testimony by use of the statements previously made. It is very doubtful if the Government's evidence was sufficient to take the case to the jury, although the District Judge overruled a motion for judgment of acquittal made at the close of the Government's case. While the case was still in progress, the District Judge, on his own motion, issued bench warrants for these two witnesses, charging them with perjury and committed them to jail. They were released on $5,000 bond. This action was publicized in the Nashville Banner and the Nashville Tennessean, newpapers having a general circulation in the area from which the jurors were taken. After an overnight recess, during which the newpapers were available to the jurors, and following the close of the appellant's defense, the Government, over objection of appellant's counsel, reintroduced Goldie Scott and John Thomas in rebuttal. They then testified in accordance with their previous statements to the FBI agents. This testimony, allegedly in rebuttal, if believed by the jury, was sufficient to establish the necessary knowledge and intent on the part of the appellant.

Although appellant relies upon several alleged errors in the rulings of the trial judge, we are of the opinion that the disposition of this case rests upon the action of the trial judge in overruling appellant's motion for a mistrial when the Government offered Goldie Scott as a witness in rebuttal for the purpose of changing her testimony of the previous day and permitting her and John Thomas to then testify in accordance with their statements to the FBI agent.

One of the fundamental rules of criminal law is that a defendant in a criminal case is entitled to be tried by jurors who "should determine the facts submitted to them wholly on the evidence offered in open court, unbiased and uninfluenced by anything they may have seen or heard outside of the actual trial of the case." Stone v. United States, 6 Cir., 113 F.2d 70, 77; Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; Wheaton v. United States, 8 Cir., 133 F.2d 522, 527; Little v. United States, 10 Cir., 73 F.2d 861, 864.

Unfavorable publicity to a defendant given in newspapers about a pending jury trial is not necessarily grounds for setting aside a verdict. The Court may be satisfied from an examination of the facts that the newspaper article was not seen or read by any of the jurors. Itow v. United States, 9 Cir., 223 F. 25, 28. Or the account may be merely an accurate statement of the proceedings unaccompanied by newspaper interpretation or comment and, under proper instructions of the Court, not prejudicial. Miller v. Commonwealth of Kentucky, 6 Cir., 40 F.2d 820, 822–823; Klose v. United States, 8 Cir., 49 F.2d 177, 182, certiorari denied 284 U.S. 626, 52 S.Ct. 11, 76 L.Ed. 534; United States v. Pisano, 7 Cir., 193 F.2d 355, 360–361, 31 A.L.R.2d 409; Madden v. United States, 9 Cir., 20 F.2d 289, 294; United States v. Leviton, 2 Cir., 193 F.2d 848, 857, certiorari denied 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350.

But newspaper publicity may be of such character as to result in prejudice to the defendant and to cause a mistrial. Concurring opinion of Justices Jackson and Frankfurter in Shepherd v. State of Florida, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740; Griffin v. United States, 3 Cir., 295 F. 437; State v. Pierce, 178 Iowa 417, 159 N.W. 1050, 1056; Meyer v. Cadwalader, C.C.E.D.Pa., 49 F. 32; United States v. Ogden, D.C.E.D.Pa., 105 F. 371. See also McKibben v. Philadelphia & R. Ry. Co., 3 Cir., 251 F. 577.

*Although* there was *no* direct evidence in this case that the newspaper articles were read by any juror, it is obvious that one or more of the jurors probably did. In this connection the following statement from the opinion in Meyer v. Cadwalader, supra [49 F. 36], is much in point. "It is idle to say that there is no direct evidence to show that the jury read these articles. They appeared in the daily issues of leading journals, and were scattered broadcast over the community. The jury separated at the close of each session of the court, and it is incredible that, going out into the community, they did not see and read these newspaper publications. That these published statements were well calculated to prejudice the jury against the plaintiffs and deprive them of a fair trial is a proposition so plain that it would be a sheer waste of time to discuss it."

■ In our opinion, the newspaper publicity tended to prejudice any juror *who read it against the appellant.* Such juror could hardly fail to be impressed by this expression on the part of the judge of his opinion about the testimony favorable to appellant on the part of these two witnesses. It strongly suggested to such juror that such testimony was the result of improper conduct on the part of appellant, which, however, the evidence failed to show. As said by Chief Justice Hughes in Quercia v. United States, 289 U.S. 466, at page 470, 53 S.Ct. 698, at page 699, 77 L.Ed. 1321: "The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence 'should be so given as not to mislead, and especially that it should not be one-sided'; that 'deductions and theories not warranted by the evidence should be studiously avoided.' " This Court has heretofore held that such publicity under similar circumstances was prejudicial to a defendant and necessitated a new trial.

Harrison v. United States, 6 Cir., 200 F. 662, 669. See also Henry v. United States, 6 Cir., 204 F.2d 817.

The Government contends that any prejudice that might have resulted to the appellant was waived by him when the trial judge asked his counsel if he wanted the Court to question the jurors as to whether they read the articles and as to whether it might have prejudiced them in the case, to which counsel replied that he did not believe that "that would be compatible to the proper interest of the defendant." The trial judge thereupon overruled the motion for a mistrial and proceeded with the evidence.

■■ Any prejudice to the appellant that existed at that time was not caused by any act of the appellant. It could very well be that questioning the jury would be more prejudicial than helpful. We do not believe that appellant was required to agree to such questioning in order to preserve his contention that the appellant was entitled to a mistrial. Under the circumstances there was a rebuttable presumption that the rights of the appellant were prejudiced. The District Judge should have taken such steps as were considered necessary by him to rebut that presumption, and if not convinced that the presumption had been rebutted, to have declared a mistrial. Stone v. United States, supra, 6 Cir., 113 F.2d 70, 77–78; Wheaton v. United States, supra, 8 Cir., 133 F.2d 522, 527; United States v. Grady, 7 Cir., 185 F.2d 273, 275; United States v. Rakes, D.C. E.D.Va., 74 F.Supp. 645, 648; Meyer v. Cadwalader, supra, D.C.E.D.Pa., 49 F. 32, 36.

■ In Klose v. United States, supra, Madden v. United States, supra, and United States v. Leviton, supra, the Court carefully instructed the jury against the possibility of prejudice, which the repective Courts of Appeals considered sufficient to avoid prejudice to the defendants. In the present case no attempt was made to ascertain whether any juror had read the articles. The instructions are not included in the record,

**640**

but appellee makes no claim that an instruction against possible prejudice from reading such newspaper articles was given to the jury. As stated by this Court in Stone v. United States, supra, 113 F.2d 70, 77: "The question is, not whether any actual wrong resulted * * * under the circumstances related, but whether it created a condition from which prejudice might arise or from which the general public would suspect that the jury might be influenced to reach a verdict on the ground of bias or prejudice."

The judgment is reversed and the case remanded to the District Court for a new trial.