359 P.2d 66

**STATE of Arizona, Appellee,**

v.

**Felton M. HILLIARD, Appellant.**

No. 1173.

Supreme Court of Arizona.

Feb. 2, 1961.

Rehearing Denied March 7, 1961.

Bernstein, V. C. J., and Struckmeyer, C. J., dissented.

Lawrence C. Cantor, Phoenix, for appellant.

Robert W. Pickrell, present Atty. Gen., Wade Church, former Atty. Gen., Charles

Stidham, former County Atty., Phoenix, for appellee.

JENNINGS, Justice.

The defendant-appellant Felton M. Hilliard was convicted on two felony counts to wit: Rape, count one (1), and Burglary in the first degree, count two (2), and sentenced by the court to serve not less than thirty-five (35) years nor more than forty-five (45) years on count one (1), and not less than five (5) years nor more than seven (7) years on count two (2), the sentences to run concurrently. From the judgments of conviction and the orders of the court denying the motions for a new trial, and in arrest of judgment, this appeal was taken.

The facts briefly stated in the light most favorable to sustaining the convictions are that the prosecutrix was awakened about 2 a. m. in her small one-room cabin by defendant who choked, attacked, and threatened her and who later, after drinking some beer, fell asleep on her bed.

Defendant claimed the prosecutrix had approached him, a stranger out on the street, had invited him into her house, and that the intercourse was voluntary.

The defendant presents five assignments of error. The first assignment states that the trial court erred in refusing to grant the defendant a new trial on the ground that he was denied his right to a trial by an impartial jury as a result of the action of a member of the jury panel in publicly denouncing the defendant in the presence of her fellow jurors. This incident occurred, however, in front of an entirely different panel than that which returned the verdicts against the defendant.

The case came on for trial September 14, 1959. During the voir dire the prospective jurors were asked by the court whether any of them were acquainted with the defendant. One of them replied:

"Your Honor, I don't know if I am acquainted with him or not, but he is the one that attacked my daughter several years ago, so * * *."

The court immediately granted a mistrial.

The following day, in order to insure an impartial trial, the court asked the new prospective jurors if they had been in the courthouse the day before. Some said yes. The court then asked if any had heard discussion of the case in any form. One woman so indicated. She was instructed to approach the bench. Out of the hearing of the other jurors she told what she had heard and was promptly excused. None of the other jurors had heard of the mistrial.

The defendant then made a motion to vacate the trial setting so that he might be tried by a later venire. The motion was denied. The defendant contends that he was thereby denied a fair and impartial trial as guaranteed by the Constitution of

Arizona, Art. 2, § 24, A.R.S. There was no evidence that any of the panel which returned the verdict had ever heard of the mistrial. The jury was in fact an impartial one.

 A defendant is not entitled to be tried by any particular jury but only by one which is fair and impartial. State v. Miller, 71 Ariz. 140, 224 P.2d 205; Conner v. State, 54 Ariz. 68, 92 P.2d 524; Kinsey v. State, 49 Ariz. 201, 65 P.2d 1141, 1142, 125 A.L.R. 3. However, the trial court has the right to use its discretion on a challenge for cause, and so long as there has been no abuse of that discretion it will not be disturbed on appeal. State v. Brady, 66 Ariz. 365, 189 P.2d 198; Riley v. State, 50 Ariz. 442, 73 P.2d 96.

Defendant next contends that the trial court erred in refusing to permit defendant to poll the jurors as to whether or not the jurors might have read newspaper articles concerning the trial. Defendant's counsel advised the court that a local newspaper had published an account of the juror's statement which prompted the mistrial. There was no evidence whatsoever that any juror had disobeyed the court's admonition which, at the outset of the trial was as follows:

"During the recess and all future recesses, * * * It is quite important under the circumstances that you be alert and do not permit any communication to come to you. I don't care if it is by some individual or through newspaper or radio or television. I don't know, but just do not permit yourselves to be communicated with concerning any matter involving this case in any way, shape, or form."

The admonition was again given at the next recess.

At the close of the day's session and before the article in question was published, the court gave the following admonition:

"We will take the evening recess at the present time. We will stand in recess until 9:30 o'clock tomorrow morning. During this evening recess and all other future recesses, again I wish to admonish you as to the jury and the alternate juror that you are not to discuss the purported facts of this case among yourselves, nor with any other person. Now any other person does include your respective spouses. In other words, do not discuss the purported facts of the case with your husbands or wives or with any person at all. Do not permit anyone to endeavor to discuss any phase of this proceeding and do your best to remain out of the hearing of any radio announcement, if such there be, or television, or newspaper. In other words, do not permit yourselves to be communicated with in any way, shape, or

form concerning the possible facts of this particular case."

At each recess, during the trial, the court either gave these admonitions in full or referred to them in such a manner as to further emphasize the obligation of the jurors to heed the admonition.

At the outset of the trial during the voir dire examination of the jurors the following colloquy took place:

The Court: "May I interrupt and ask the whole panel a general question I think should be asked that I neglected to ask? Do any members of the panel feel that perhaps they know any of the purported facts of this case? Have any of you perhaps, if it was reported in the paper, read about it in the paper?

Mr. Fox: "I have read about it in the paper.

The Court: "Was that recently or some time ago?

Mr. Fox: "That was, I would say, sometime in June.

The Court: "And do you feel you recall any of the *particular details related in the newspaper? Do you feel that you would be able to completely disregard anything you might have read in the newspaper*, realizing that the newspaper stories are based upon, you might say, stories turned in by the reporters and often the reporters have deadlines and their source of information might not perhaps be accurate, and therefore, that anything you might have read could be completely forgotten and any verdict based exclusively upon the evidence and the testimony presented here in court? Do you feel you could do that?" (Emphasis ours.)

Mr. Fox: "Yes" * * *

Thus, in this background, the court emphasized by his admonitions to the entire jury *not* to read any further newspaper accounts or to be influenced by them.

In People v. Phillips, 120 Cal.App. 644, 8 P.2d 228, the defendant filed an affidavit alleging that some of the jurors had become prejudiced by reading a newspaper headline. The court said:

" * * * It perfectly appears from the entire affidavit that this is a conclusion on the part of the affiant, and that it amounts to no more than an assertion of his opinion and belief to that effect. This is not sufficient."

In the instant case there is not one scintilla of evidence that any juror read the article in question. If a trial court is required to poll a jury on one aspect of its admonition at the whim of counsel with no proof of violation, then it must also poll a jury on each and every aspect of its admonition whenever counsel request it.

■ There is no presumption that jurors will betray their trust. Where a jury has been clearly admonished not to read newspaper accounts of the trial, the refusal of the trial judge under the circumstances of this case to permit counsel to interrogate them on the speculative possibility that one or all of them might have read newspaper accounts is not error. The granting of defendant's request that jurors be interrogated during trial as to whether they have read newspaper accounts rests in the sound discretion of the trial court. State v. DeZelar, 230 Minn. 39, 41 N.W.2d 313, 15 A.L.R.2d 1137; Kitts v. State, 153 Neb. 784, 46 N.W.2d 158; People v. Phillips, supra. Under the circumstances of this case the trial court was fully within its discretion in refusing counsel's request.

As his third assignment of error the defendant contends that the trial court erred in failing to grant a new trial on the ground that the defendant was prejudiced by the prosecutor's failure to follow, in the presence of the jury, impeachment matter concerning an alleged former conviction of the defendant, which the defendant equivocally denied.

■ Though defendant contends that the prosecution prejudiced him by not introducing the exemplified copy of commitment in evidence and showing the jury that he was either mistaken or lying, this could have been done. The rule is stated in State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081:

"The general rule is that the state may inquire of the defendant when he is a witness if he was previously convicted of a felony. If the answer is in the affirmative he may be asked the number of such convictions, the names and nature of the crimes, and the places where they were committed, State v. Polan, 78 Ariz. 253, 278 P.2d 432, and if the answers are correctly given the inquiry must end there. If any answer of the defendant in this regard is incorrect, or if he claims he does not remember, or if he denies such conviction or equivocates in his response to questions as to conviction of felonious crimes, the facts of his conviction or convictions *may* be shown by the record thereof." (Emphasis ours.)

Error lies only where the State makes insinuations which it is not able and prepared to prove. State v. Stago, 82 Ariz. 285, 312 P.2d 160; State v. Singleton, 66 Ariz. 49, 182 P.2d 920. Thus in this situation where the State has first made an offer of proof of conviction, it may let the defendant's equivocation pass. Under the circumstances of this case it might have been better if the court had, after the defendant's equivocation, required the State to introduce the exemplified copy into evidence, since the prosecutor was willing and able to do so. However, under the interpretation, we consistently have given section 22, article 6 of the State Constitution,

**136**

the mere fact of error does not raise a conclusive presumption of prejudice. State v. Singleton, supra.

 In his fourth assignment of error defendant contends the prosecuting attorney in argument to the jury was guilty of misconduct prejudicial to the defendant's right to a fair and impartial trial. It is urged that the prosecutor "testified" in argument stating his personal beliefs concerning the reason why the police did not fingerprint the front door. As this Court previously stated in State v. Jordan, 80 Ariz. 193, 294 P.2d 677, 679, 680:

"* * * It is elementary that arguments must be based on facts which the jury is entitled to find from the evidence and not on extraneous matters that were not or could not be received in evidence."

This Court does not in the present case minimize the statement from State v. Jordan, supra. However, one officer Tease had previously testified that some surfaces, such as those which are rough, dusty, or greasy, will not retain fingerprints. This Court views the prosecutor's argument merely as a discussion of the evidence.

We have held on various occasions that attorneys are given wide latitude in their arguments to the jury. State v. Thomas, 78 Ariz. 52, 275 P.2d 408; State v. McLain, 74 Ariz. 132, 245 P.2d 278; Sage v. State, 22 Ariz. 151, 195 P. 533. As was stated in State v. Jordan, supra:

"* * * a prosecutor is allowed considerable latitude in a discussion of the evidence, the possible facts the jury may find and the reasonable inferences that may be drawn therefrom."

We, therefore, see nothing prejudicial or improper in the prosecutor's remarks.

 The defendant's fifth assignment of error is that the testimony of the prosecutrix is inherently improbable and that it is refuted by the testimony in the State's case. We believe this assignment is without merit.

Appointed counsel, and we commend his diligence and sincerity, argues strenuously the difficulties of a Negro defendant getting a fair trial when involved with a white woman under these circumstances. There is nothing in the record which would lend credence to a belief that the verdicts were the result of any racial prejudice.

The story of the prosecutrix is not inherently improbable. There is evidence that a concupiscent man spied on her where the window shade would not completely close; crawled through the window after she was asleep and raped her. Her testimony is amply corroborated by other witnesses; physical evidence of severe bruises on her throat and breasts; arousing the landlord while she was shaking and

hysterical; presence of sperm; and the cut window rope dropping the window down into the wall; and the torn window screen near the defendant's clothes, which he said he had left in the garage, later testifying that he left them on a chair by the bed and being unable to account for their presence in the garage. A pair of scissors was found by the bed and a knife was found several days later stuck underneath the mattress at the side of the bed.

■■■■ If the prosecutrix' testimony is not physically impossible nor so incredible that no reasonable man would believe it, no corroboration is necessary and the conviction will be sustained. State v. Merryman, 79 Ariz. 73, 283 P.2d 239; State v. Laney, 78 Ariz. 19, 274 P.2d 838. Where the sufficiency of the evidence to support a conviction is in issue, the evidence must be considered in the strongest light in favor of the verdict and all reasonable inferences therefrom must be taken in the manner most unfavorable to the defendant. State v. Milton, 85 Ariz. 69, 331 P.2d 846.

The judgment is affirmed.

UDALL and LOCKWOOD, JJ., concur.

BERNSTEIN, Vice Chief Justice (dissenting).

I cannot agree with the majority that the trial court acted within its discretion in refusing to inquire of the jurors, upon request of defendant, whether they read a certain newspaper article. The article in question appeared in the Phoenix Gazette the evening after the jury was selected and in the Arizona Republic the following morning. The article in the Arizona Republic stated in part:

> " * * * His first experience in court Monday was dramatically termed a mistrial before a jury could be selected.

> "The mistrial resulted when a woman on the jury panel, in answer to a question by Judge Warren L. McCarthy, accused Hilliard of raping her daughter two years ago. The judge had asked the panel if anyone knew the defendant."

The statements alluded to in this article were considered by the trial judge to be so prejudicial when made that he declared a mistrial. The following day when a new jury was being selected, the trial judge again considered it so prejudicial that he dismissed on voir dire all who had heard of the previous mistrial. There is no doubt that this article was prejudicial to the defendant if read by the jurors. Especially is this true when the newspaper article attributed the words *"raping"* her daughter to the woman juror when she actually said that he *"attacked"* her daughter. The cases cited in the majority opinion as supporting the decision do not do so. In State

v. DeZeler, supra, there was no finding that the newspaper articles were prejudicial. In fact the court stated:

" * * * It is also to be noted that the newspaper articles which were submitted to the trial court as special exhibits were not so inflammatory, distorted, or misleading that the trial court, in the light of its cautionary instructions, could not have found in the exercise of a sound discretion that a reading thereof by any juror would be nonprejudicial." 230 Minn. 39, 51, 41 N.W.2d 313, 321.

In Kitts v. State, supra, the court, in relation to the newspaper articles there in question stated:

" * * * An examination of them discloses that they contained simply a factual report of the proceedings without falsification, unfair or inflammatory elaboration, or distortion. In that connection, we find no reason for granting a new trial." 153 Neb. 784, 795, 46 N.W.2d 158, 165.

The theory behind these cases appears to be that if the news article is one which fairly states the facts as adduced at the trial or "puffs up" the evidence the jurors will not be prejudiced since they were present at the trial and could determine the truth or falsity of the reporting.

If an article contains material which is not admissible as evidence and is unfair or inflammatory to the defendant, the jury would be prejudiced upon reading it in the newspaper. In the latter instance the trial court, in order to insure the defendant a fair and impartial trial, should question the jury to determine if such prejudicial matter was brought to the jurors' attention simply because a defendant has no other way to find out whether the jurors followed the court's admonition.

Here, the majority, in relying upon the cases of Kitts and DeZeler, infers that the newspaper articles in the present case are not of a prejudicial nature. The majority fails to recognize that the facts stated in the article were prejudicial and so declared in granting the mistrial and in the removal of jurors on voir dire. If such a statement was prejudicial when made and heard by the trial jurors, does it not follow that it was prejudicial when it appeared and was exaggerated in the newspapers? The statements made by the Supreme Court of the United States in Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250, should be controlling:

"We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's

evidence. [citing case] It may indeed be greater for it is then not tempered by protective procedures."

The majority, however, base their opinion upon two premises: (1) the presumption that the jurors will not violate their trust based on the court's admonitions, and (2) there is no evidence that any juror read the particular article. Therefore, the majority conclude that the trial court did not abuse its discretion in refusing to question the jury on the matter.[1] That one or more of the jurors probably did read the article in question is a reasonable inference to be drawn in light of human conduct and behavior:

"Although there was no direct evidence in this case that the newspaper articles were read by any juror, it is obvious that one or more of the jurors probably did. In this connection the following statement from the opinion in Meyer v. Cadwalader, supra, [49 F. 36], is much in point. 'It is idle to say that there is no direct evidence to show that the jury read these articles. They appeared in the daily issues of leading journals, and were scattered broadcast over the community. The jury separated at the close of each session of the court, and it is incredible that, going out into the community, they did not see and read these newspaper publications. * * *'" Briggs v. United States, 6 Cir., 221 F.2d 636, 639.

It is a fundamental rule of criminal law "that a defendant in a criminal case is entitled to be tried by jurors who 'should determine the facts submitted to them wholly on the evidence offered in open court, unbiased and uninfluenced by anything they may have seen or heard outside of the actual trial of the case.'" Briggs v. United States, supra. He is entitled to the protective shield afforded by the rules of evidence and the Rules of Criminal Procedure. The defendant was denied a fair and impartial trial by being refused the opportunity of discovering whether any of the jurors had read the prejudicial newspaper article. In this respect the trial court abused its discretion.

The judgment should be reversed and remanded for a new trial.

STRUCKMEYER, C. J., concurs in the foregoing dissent.

---

1. Yet the opinion itself indicates that it is probable that a juror had read the article when it stated: "Thus, in this background, the court emphasized by his admonitions to the entire jury not to read *any further newspaper accounts* or to *be influenced by them.*" In order to be influenced by them, the jurors must have read the newspaper accounts. The non sequitur of the majority's opinion on this point is obvious.