[Criminal No. 878. Filed July 10, 1939.]

[92 Pac. (2d) 524.]

# FRANK CONNER, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. Galbraith A. Little, Mr. Nasib Karam and Mr. Lemuel P. Mathews, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Respondent.

LOCKWOOD, J.—Frank Conner, hereinafter called defendant, was informed against for the crime of murder in the first degree. He was tried before a jury which found him guilty and fixed the penalty at death, and his appeal is now before us.

There are but two assignments of error. One of them goes to the refusal of the court to allow a challenge for cause to A. L. Peck, who was called as a juror in the case, and the other is based on the alleged failure of M. I. Davis, another juror, to answer truly concerning his qualifications. Section 5035, Revised Code of 1928, gives the grounds of challenges for jurors in criminal cases. Among these are the following:

"5. standing in the relation of guardian and ward, attorney and client, master and servant, or landlord and tenant, or being a member of the family of the defendant, or of the person alleged to be injured by the offense charged or on whose complaint the prosecution was instituted, or in his employment on wages; . . . 13. for the existence of a state of mind on the part of the juror in reference to the case or to the defendant or to the person alleged to have been injured by the offense charged, or on whose complaint the prosecution was instituted, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party."

The juror Davis was asked on his *voir dire*:

"Q. Are you acquainted with any of the attorneys for the State? A. I know all of them casually.

"Q. You have no business pending with them? A. Not at present.

"Q. Did you have any business with any of them? A. Mr. Robins.

"Q. How long was that? A. Sometime this year.

"Q. Is he still your attorney in that case? A. No sir.

"Q. That case is already terminated? A. Yes."

Nothing in the examination of the juror suggested that he was not in every respect fully qualified to sit, and he was then passed by both the state and the defendant. Mr. Robins was the county attorney who filed the information in the case, and it appeared, after the trial had been concluded and the defendant sentenced, that Davis had employed the county attorney to represent him in a divorce proceeding a short time before the trial of the instant case. The evidence in that proceeding had been heard and the case submitted, but the formal rendition of judgment by the court had not been made when the present case was called for trial. A motion for new trial was made raising this matter but it was denied.

Technically speaking, the relationship of attorney and client, referred to in subdivision 5, *supra,* had not yet been terminated, but we cannot say that the examination of the juror shows affirmatively that he deliberately perjured himself on this point. It is natural enough for the ordinary layman, after the trial of his case has been concluded, to assume that the entire matter is terminated, and that the relationship of attorney and client no longer exists. However, the language of the statute is plain that if the relationship does still exist, a challenge for cause should be allowed, and while the challenge was not formally interposed during the trial, it was due to the fact that the juror had failed to disclose the precise situation existing to the attorney for the defense, and he properly raised the matter by his motion for a new trial.

The other assignment presents a different question. Juror Peck on his *voir dire* disclosed a strong friendship which had existed between him and the deceased, a bitter feeling as to the death of his friend, and an expression of an opinion as to the case which it would be very difficult for him to lay aside. On the other

hand, he stated that if he did serve on the jury, he would be fair and would consider only the evidence which was presented to him, and disregard everything else. He also said that if he, himself, were being tried for the murder of the deceased he would be willing for twelve men in his existing frame of mind to pass upon his case. The court finally denied the challenge for cause, but Peck was challenged peremptorily by the defendant and did not sit in the case.

Upon the face of the record, there is some doubt in our minds as to whether, technically speaking, the showing was such that it was erroneous for the court to refuse to grant the challenge as to the juror Peck, but assuming that it should have been granted, the question remains whether the failure so to do was not only error but was prejudicial. It has been held frequently that even though a juror to whom a challenge for cause was made, which should have been allowed, does not sit in the trial of the case because he is challenged peremptorily, that this does not cure the error in failing to allow the challenge for cause, if the defendant has exhausted his peremptory challenges, for the reason that, being forced to exercise one of his peremptory challenges in order to strike the obnoxious juror, he has one less challenge of that nature left to use against other jurors whom he may not desire to sit in the case. *State* v. *Stentz,* 30 Wash. 134, 70 Pac. 241, 63 L. R. A. 807; *State* v. *Brown,* 15 Kan. 400; *Commonwealth* v. *Vitale,* 250 Pa. 552, 95 Atl. 724; *Holman* v. *State,* 115 Ark. 305, 171 S. W. 107. In some jurisdictions this is not the rule, however, if the jurors who actually sit are all legally competent, even though personally objectionable to the defendant. *People* v. *Riggins,* 159 Cal. 113, 112 Pac. 862. Particularly is this true when no other juror who was challenged for cause is allowed to sit. *State* v. *Thorne,* 41 Utah 414, 126 Pac. 286, Ann. Cas. 1915D 90.

But assuming for the argument that it was error to deny the challenge for cause to the juror Peck, and to refuse to grant a motion for new trial after it had been discovered that the juror Davis was disqualified under subdiv. 5, *supra,* do these two matters necessarily require a reversal of the case?

Article 6, section 22, of the Constitution of Arizona, so often cited by us in our decisions, reads as follows:

"The pleadings and proceedings in criminal causes in the courts shall be as provided by law. No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

In the case of *Lawrence* v. *State,* 29 Ariz. 247, 240 Pac. 863, 866, we had under consideration a situation very analogous to that in the present case. It also was a case where the defendant had been convicted of murder in the first degree, and sentenced to death. It appeared clearly in that case that the law of the state had not been followed in selecting the jury, but it also appeared, as in the present case, that there was nothing to show that the twelve men who tried him were not fair and impartial jurors, or that he did not have a fair trial on the merits. In the Lawrence case, after holding that the court had erred in denying the challenge, we said:

"There is no doubt that many decisions hold that an error of this kind is always fatal and counsel for defendant with commendable zeal has collated them and urged them upon us. We feel, however, that the principle of law upon which they are necessarily based, to the effect that it is presumed any error in a criminal case is prejudicial, is a fallacious one.

"One of the chief causes for the alarming increase of crime and the lessened esteem in which the administration of criminal justice is notoriously held by the layman undoubtedly is the tendency of the courts to adhere to archaic rules of procedure, when the reasons

which caused their adoption have long since vanished. In ancient times a man accused of crime had no right to counsel; could not even testify in his own behalf; had no means of compelling the attendance of witnesses; was not entitled to bail as of right; and the cards were in many ways heavily stacked against him. It was in order to lessen, partially at least, these heavy odds that the courts adopted the rule that any error against a defendant in a criminal case was presumed to be prejudicial. But of late years the situation has changed. Every disability of the defendant has been removed, and he is now brought to trial, not only with every right enjoyed by the state, but with many privileges denied the latter. As an illustration of this we cite a few instances: The defendant must be advised in advance of trial of the exact nature of the charge against him. The state can only guess at this line of defense. He may ask for a change of place of trial, and disqualify the trial judge. The state cannot. He always has more challenges to the jury than the state. He may take the depositions of absent witnesses on his behalf. The state may not take them against him. He need not testify unless he wishes, and the state cannot comment on the fact. If a state's witness fails to take the stand, the defendant may comment as he desires. The state must prove his guilt beyond all reasonable doubt. He may admit doing the act charged, and, if he sets up any special defense, such as insanity, self-defense, lack of criminal intent, etc., he need not prove it by even a preponderance of evidence. The mere raising of a reasonable doubt as to whether or not the defense is true acquits him. And above all, if he is finally convicted he may appeal at the expense of the state, and show in the appellate court any mistake committed in the trial below, while, if he be acquitted, no matter if as a result of the grossest error by the court, perjury by the witnesses, or bribery of the jury he may with impunity boast of his crime. He is free for all time, for the state may not by an appeal show the unjust acquittal and again place him on trial. To hold that with the balance thus changed in his favor he should be given the additional privilege of claiming that any error of procedure, no matter how trivial, and no matter how little it may

have affected the verdict, entitles him to a new trial is indeed to say with one of our law writers that 'in a criminal trial the state has no rights which a defendant is bound to respect.'

"The people of Arizona themselves have expressed their opinion of this doctrine. Article 6, section 22, of our Constitution, reads as follows: [Quoting]

"This section was undoubtedly inserted for the express purpose of avoiding the many miscarriages of justice occasioned by strict adherence to the old rule of presumption that error is prejudicial, and it is our duty to give it the effect intended by its makers. Whatever may be the rule in other jurisdictions, we hold that in Arizona no cause, civil or criminal, will be reversed for formal error, when upon the whole case it appears that substantial justice has been done, and that prejudice will not be presumed, but must appear probable from the record.

" . . . The transcript of evidence containing the examination of jurors on their *voir dire* shows that very few of them were in any manner prejudiced in the case. . . . Notwithstanding the fact that the jury list was not compiled in strict accordance with law, since the record fails to show any prejudice to the defendant thereby, under article 6, section 22, *supra,* we will not reverse the case on that ground." And the judgment was affirmed.

 We have examined the transcript of evidence carefully and it appears from it that the defendant admitted the homicide and that it was committed in the perpetration of a robbery. His only excuse therefor was that he was acting to some extent under the influence of liquor and narcotic drugs, and that the fatal shot was fired in a scuffle with the deceased. Not one of the jurors who actually sat in the trial of the case was challenged for cause, and their examination, which appears in the reporter's transcript, shows that they were fully qualified. A defendant is not entitled to be tried by any particular jury, but merely by one which is fair and impartial. All of the formal rules of law regarding the formation of a jury are intended

to secure this kind of a jury, and have no other purpose. If the record shows affirmatively that such a jury was secured, even though some of the formal provisions of the law regarding the manner of their selection may have been disregarded, and that the evidence fully and completely sustains their verdict, we think the provision of the Constitution above quoted applies.

■ The record in this case showing affirmatively that the jury which tried the defendant was fair and impartial, and the evidence being conclusive as to his guilt of the crime wherewith he was charged, and it appearing that even if error did occur in the trial of the case it was not such as to affect the verdict in any manner, the judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.