31 P.3d 830

**STATE of Arizona, Appellee,**

v.

**Miguel Angel IBANEZ, Appellant.**

**No. 1 CA–CR 00–0821 RT.**

Court of Appeals of Arizona,
Division 1, Department C.

Sept. 18, 2001.

---

Janet Napolitano, Attorney General, by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Cari McConeghy–Harris, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James R. Rummage, Deputy Public Defender, Phoenix, Attorney for Appellant.

## OPINION

HALL, Judge.

¶ 1 Miguel Angel Ibanez appeals the trial court's denial of his challenge for cause of a prospective juror who stated it would be "difficult" or "hard" for her to render a fair and impartial verdict. Because we agree with Ibanez that the court erred, we reverse.

## FACTS

¶ 2 Ibanez was tried on charges of aggravated driving while under the influence of intoxicating liquor while his driver's license was suspended and aggravated driving while there was an alcohol concentration of .10 or more in his body within two hours of the time of driving while his driver's license was suspended. During *voir dire*, the trial court instructed the jury panel that it was not against the law to drink alcohol and then drive a vehicle unless "someone's ability to drive that vehicle is impaired to the slightest degree." The court then asked, "[I]s there [anyone] here who for any particular reason has chosen not to drink alcohol in their lifestyle, personal life?" and "[W]ould those reasons affect your ability to be fair in deciding what the facts are from the evidence?" Juror N.D. answered, "Yes. Religious beliefs. And my ex-husband was an alcoholic so I don't know. I don't know where I would stand on it." When the trial court inquired, "[A]re you saying you don't know whether you could be fair or impartial?", she responded, "Yes."

¶ 3 The trial court then asked the juror:

But Ms. [D.], do you still—you could still decide this case relating to Mr. Ibanez based on what you will hear and have to consider from witnesses and any exhibits and then apply the law as opposed to thinking I remember what happened between me and my ex-husband and I can't separate that out. I just can't be fair to Mr. Ibanez and the State in deciding what the facts are. Do you think you could?

The juror responded, "I think it would be hard." The court followed up with: "You're not saying you can't do it, it would be hard?" The juror answered, "It would be difficult." After this exchange, the trial court moved on to question other jurors. Later, the same juror, responding to various questions from the court to the panel, provided the following information: (1) her daughter, son and ex-husband all had been charged with DUI offenses, and (2) her daughter had been convicted of contributing to the delinquency of a minor by providing alcohol. In response to the court's questions whether her knowledge of her family members' cases or the manner in which they were handled by the criminal justice system would affect her ability to be fair to Ibanez, she answered "No," "Not that I know of" and "I don't think so."

¶ 4 Later, the prosecutor asked the jurors whether they lived by a self-imposed limit of how much they would allow themselves to drink and still be able to drive. Juror N.D. responded, "I don't think anybody has any business having a drink and driving, anything that would impair your judgment." The prosecutor then asked, "So your answer would be zero?" She stated, "Yes."

¶ 5 Ibanez moved to strike the juror for cause. In denying his motion, the trial court provided the following explanation:

[S]he did state that she had various family members including an ex-husband who was involved in alcohol related matters including her daughter who was arrested for contributing to the delinquency of a minor. I think it was provided alcohol to a minor. I asked her regarding those matter[s] if they would affect your [sic] ability to be fair and impartial. I believe the responses were that they would not affect her ability to be fair.

She did state that she would be—that it was difficult for her based on her religious beliefs to be fair and impartial regarding alcohol consumption or driving under the influence of alcohol. But she did not say she couldn't be fair or impartial. And on that basis you[r] request[] to have [her] excused for cause is denied.

Ibanez then used a peremptory strike to remove the juror from the panel.

¶ 6 The jury convicted Ibanez of both charges. The trial court sentenced him to a mitigated term of eight years to be served concurrently with a two-and-a-half year sentence for violating probation.

## DISCUSSION

¶ 7 Rule 18.4(b) of the Arizona Rules of Criminal Procedure requires that the trial court "shall excuse" a juror "[w]hen there is reasonable ground to believe that [the] juror cannot render a fair and impartial verdict. . . ." Because a trial court is in the best position to observe a potential juror's demeanor and credibility, its decision not to excuse a juror will be set aside only for a clear abuse of discretion. *State v. Medina*, 193 Ariz. 504, 511, ¶ 18, 975 P.2d 94, 101 (1999).

¶ 8 If a prospective juror expresses serious doubts regarding her ability to be fair and impartial, she must be excused for cause, *State v. Purcell*, 199 Ariz. 319, 323, ¶ 8, 18 P.3d 113, 117 (App.2001), unless she ultimately assures the trial court that she will base her decision solely upon the evidence. *State v. Martinez*, 196 Ariz. 451, 459, ¶ 28, 999 P.2d 795, 803 (2000). A juror need not express her assurance of fairness and impartiality in absolute terms. *See id.* at 458–59, ¶ 27, 999 P.2d at 802–03 (juror stated "I think I can be fair"); *State v. Trostle*, 191 Ariz. 4, 13, 951 P.2d 869, 878 (1997)(juror responded "I guess" when asked if he could keep an open mind despite pretrial publicity; another juror said he did not "believe" the publicity would affect his ability to do the same); *State v. Clayton*, 109 Ariz. 587, 592–93, 514 P.2d 720, 725–26 (1973) (juror "would try" to follow instructions regarding the law of self-defense); *State v. Poehnelt*, 150 Ariz. 136, 146, 722 P.2d 304, 314 (App.1985) (juror "believed" he could be fair and impartial).

The party challenging the juror has the burden of showing that the juror will be unable to render a fair and impartial verdict based on the evidence to be presented. *Medina*, 193 Ariz. at 511, ¶ 18, 975 P.2d at 101.

¶ 9 Here, the juror initially stated that she was not sure whether she could be fair because of her religious beliefs and her ex-husband's alcoholism; she then said it would be "hard" or "difficult" to decide the case on the evidence and the applicable law. The juror's later answers suggesting that she could be fair dealt with her perceptions of how her family members were treated within the criminal justice system and did not address whether she could ultimately set aside her religious beliefs and the issue of her ex-husband's alcoholism and decide the case based on the evidence presented at trial.

¶ 10 Thus this is not a case, as in *Medina*, in which the challenged juror ultimately expressed a willingness to follow the law. *Id.* at 510–11, ¶ 17, 975 P.2d at 100–01. Rather the facts here, after considering Juror N.D.'s later statements regarding drinking and driving, are similar to those of the juror in *State v. Sexton*, 163 Ariz. 301, 302, 787 P.2d 1097, 1098 (App.1989), in which we concluded that the trial court abused its discretion by not excusing for cause a juror who was biased against drinking and was "not sure" if she could follow the reasonable doubt standard in a DUI case. Here, as in *Sexton*, the trial court posed no further questions regarding the juror's ability to set aside her beliefs or previous experiences and deliberate impartially. *Id.* at 303, 787 P.2d at 1099.

¶ 11 Ibanez's challenge for cause was supported by reasonable grounds to believe that the juror could not render a fair and impartial verdict. Ariz. R.Crim. P. 18.4(b). The juror's statements that it would be "difficult" or "hard" for her to be fair constituted serious misgivings. *See State v. Rodriguez*, 131 Ariz. 400, 402, 641 P.2d 888, 890 (App.1981). Because she never ultimately acknowledged that she could be objective, the trial court erred when it did not excuse the juror for cause.

¶ 12 Following the trial court's erroneous denial of his challenge, Ibanez used one of his six peremptory challenges to strike the juror. Citing *United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), the state claims Ibanez suffered no prejudice because he cured any error committed by the trial court when he struck the juror. In *Martinez–Salazar*, the United States Supreme Court ruled that an erroneous refusal by a federal district court of a for-cause challenge, followed by a defendant's use of a peremptory challenge to remove that juror, does not deny or impair the exercise of peremptory challenges in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution. *Id.* at 307, 120 S.Ct. 774. The Court had held, in *Ross v. Oklahoma*, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), that the Sixth and Fourteenth Amendments do not mandate reversal when state law requires a defendant to use a peremptory challenge to cure a for-cause error, as long as the jury selected is fair and impartial. Taken together, *Ross* and *Martinez–Salazar* stand for the proposition that due process is not violated when a state limits the exercise of peremptory challenges by either requiring a defendant to use a peremptory challenge to cure an erroneous ruling on a for-cause challenge or to choose between exercising a peremptory challenge to remove the juror or leaving the juror on the panel and pursuing a Sixth Amendment challenge on appeal should the defendant be convicted.

¶ 13 In *State v. Huerta*, 175 Ariz. 262, 266, 855 P.2d 776, 780 (1993), however, our supreme court characterized peremptory challenges as a substantial right that is "clearly impinged" when a trial court erroneously denies a for-cause challenge. After distinguishing *Ross* as decided on federal constitutional grounds, the court, relying on state procedural law, adopted an automatic-reversal rule whenever a trial court erroneously denies a defendant's challenge for cause. *Id.* at 263, 266–67, 855 P.2d at 777, 780–81.

¶ 14 In Arizona, a state procedural rule may provide greater protection than federal constitutional provisions. *See State v. Doolittle*, 155 Ariz. 352, 357, 746 P.2d 924, 929 (App.1987) (Arizona Rule of Criminal Procedure 12.6 provides greater protection than does the Fifth Amendment to the United States Constitution); *see also Mills v.*

*Rogers,* 457 U.S. 291, 300, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982); *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Thus, even though *Huerta's* automatic-reversal rule was adopted seven years before the United States Supreme Court's decision in *Martinez–Salazar,* the *Huerta* rule remains valid. Therefore, we must reverse defendant's conviction. *See, e.g., Myers v. Reeb,* 190 Ariz. 341, 342, 947 P.2d 915, 916 (App.1997) (court of appeals has no authority to disregard or overrule decisions of supreme court).

¶ 15 In doing so, however, we acknowledge that our supreme court may decide to re-examine *Huerta's* automatic-reversal rule in light of *Martinez–Salazar.* Indeed, in the brief period since *Martinez–Salazar,* other state courts either have already abandoned their automatic-reversal rules or are re-considering them. *See State v. Lindell,* 629 N.W.2d 223, 236, ¶¶ 51–52 (Wis.2001) (abandoning previous rule that erroneous denial of for-cause challenge requires automatic-reversal and adopting harmless-error analysis); *State v. Entzi,* 615 N.W.2d 145, 149 (N.D. 2000) (curative use of a peremptory challenge does not violate a statutory right); *State v. Fire,* 100 Wash.App. 722, 998 P.2d 362, 364 (2000) (declining to follow *Martinez–Salazar* because "we are bound by the decisions of the Washington Supreme Court"), *petition for review granted,* 11 P.3d 826 (Wash.2000). *But see Johnson v. State,* 43 S.W.3d 1, 5–7 (Tex.Crim.App.2001) (majority reaffirms Texas version of automatic-reversal rule without discussing *Martinez–Salazar); cf. People v. Lefebre,* 5 P.3d 295, 308 (Colo.2000) (*Martinez–Salazar* inapplicable when trial court errs by granting prosecutor's motion to dismiss jurors for cause without first permitting *voir dire* questioning of those jurors by defense counsel).

¶ 16 In *Lindell,* the Wisconsin Supreme Court began its reexamination by acknowledging the "harsh reality" of the rule requiring automatic-reversal of the conviction of a defendant who had received a fair trial by an impartial jury and was found guilty beyond a reasonable doubt. 629 N.W.2d at 236, ¶¶ 51–52. After noting that all nine justices in *Martinez–Salazar* agreed that one of the reasons for peremptory challenges is to correct errors in for-cause challenges, *id.* at 245 n. 12, the court abandoned its automatic-reversal rule and adopted a harmless-error analysis in cases in which a defendant uses a peremptory challenge to strike a juror who should have been excused for cause. *Id.* at 250, ¶ 111, 120 S.Ct. 774.

¶ 17 In *Huerta,* the majority's rejection of the harmless-error rule advocated by the two dissenting justices was premised on the following rationale:

> Under the Hobson's choice presented by the dissent, the defendant who strikes the biased juror can never show prejudice, but the defendant who leaves the biased juror on the panel waives the issue. It seems that under the dissent's view, a party can only show reversible prejudice if the judge erroneously denies one more challenge for cause than a party has peremptory challenges. Such a holding would encourage parties to make increased efforts to demonstrate bias on the part of some of the other jurors ... [which] would lead to an ongoing trial of the jurors instead of the merits of the case. We do not wish to adopt a rule that will encourage and place a premium on such gamesmanship and nonproductive judicial proceedings.

175 Ariz. at 266, 855 P.2d at 780. The majority in *Huerta* cited no authority for the proposition that a "defendant who leaves a biased juror on the panel waives the issue," nor could we find any in our research of Arizona case law.[1] Neither does federal authority support the existence of what our supreme court referred to as a "Hobson's choice." Indeed, in *Martinez–Salazar,* a majority of the Supreme Court rejected defendant's claim that the trial court's for-cause mistake compelled him to use one of his peremptory challenges to remove the biased juror be-

---

1. The only pertinent case disclosed by our research was *Encinas v. State,* 26 Ariz. 24, 221 P. 232 (1923). The primary holding of *Encinas,* that an erroneous for-cause refusal is not reversible without a showing of prejudice, was disapproved in *Huerta,* 175 Ariz. at 263–64, 855 P.2d at 777–78. In dictum, however, the *Encinas* court stated that if a properly challenged juror actually sat on the jury that heard the case, "the court might feel bound to hold the order disallowing such challenge error." 26 Ariz. at 29, 221 P. at 233.

cause he had the option of leaving the juror on the petit jury and, upon conviction, pursuing a Sixth Amendment claim on appeal. 528 U.S. at 315, 120 S.Ct. 774 ("A hard choice is not the same as no choice").

¶ 18 Further, in *Lindell,* the court recognized the incongruity of elevating peremptory challenges, based as they are primarily on hunches or intuition, on a pedestal immune to harmless-error analysis while many errors of constitutional dimension are subject to such analysis. 629 N.W.2d at 249–50, ¶¶ 107–08 (commenting that automatic-reversal rule "place[s] one 'right' on a pedestal above others"). *Cf.* 5 Wayne R. LaFave, *Criminal Procedure* § 27.6(d) (2d ed.1999) (noting the multitude of constitutional errors subject to harmless-error analysis). *See also Huerta,* 175 Ariz. at 267–70, 855 P.2d at 781–84 (Corcoran, J., dissenting) (calling the majority opinion "a bizarre result," arguing for a harmless-error rule when a peremptory strike removes a biased juror and concluding that "[m]etaphysical prejudice is not enough to justify a new trial. A reversal should not result from error in the trial court that neither advantages the prosecution nor prejudices the defendant."); *id.* at 270–72, 855 P.2d at 784–86 (Martone, J., dissenting)(noting that "[p]eremptory strikes no longer enjoy [an] exalted position" and most other jurisdictions support a harmless-error rule).[2] *But cf. State v. Vreen,* 143 Wash.2d 923, 26 P.3d 236 (2001) (erroneous grant of *Batson* challenge is an impairment of defendant's peremptory challenges that is not subject to harmless-error analysis, distinguishing *Martinez–Salazar* ). However, we are bound by the automatic-reversal rule enunciated in *Huerta. Myers,* 190 Ariz. at 342, 947 P.2d at 916.

¶ 19 Accordingly, we reverse and remand with a direction that Ibanez be granted a new trial.

---

**2.** In *United States v. Martinez–Salazar,* the defendant, relying on language in *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (a "denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice"), urged the court to adopt a remedy of automatic reversal whenever the right to exercise peremptory challenges is substantially impaired. Because the

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, SUSAN A. EHRLICH, Judge.

Court found no impairment it did not address that argument. 528 U.S. at 317 n. 4, 120 S.Ct. 774. It noted, however, that "the oft-quoted language in *Swain* was not only unnecessary to the decision in that case-because *Swain* did not address any claim that a defendant had been denied a peremptory challenge-but was founded on a series of our early cases decided long before the adoption of harmless-error review." *Id.*