SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-01-0424-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | Nos. 1 CA-CR 00-0215 |
| ROBERT DWIGHT HICKMAN, | ) | 1 CA-CR 00-0542 |
| | ) | (Consolidated) |
| Appellant. | ) | |
| | ) | Maricopa County |
| | ) | Superior Court |
| | ) | No. CR 98-009183 |
| | ) | |
| | ) | **O P I N I O N** |
| | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Linda A. Akers, Judge
**AFFIRMED**

Memorandum Decision of the Court of Appeals
Division One, filed October 25, 2001
**VACATED IN PART**

---

JANET A. NAPOLITANO, ARIZONA ATTORNEY GENERAL          Phoenix
     By   Randall M. Howe, Chief Counsel,
          Criminal Appeals Section
     and  Cari McConeghy-Harris, Assistant Attorney General
Attorneys for Appellee

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER          Phoenix
     By   Louise Stark, Deputy Public Defender
Attorneys for Appellant

---

**R Y A N**, Justice

¶1      *State v. Huerta* requires automatic reversal of a criminal

trial when a defendant uses a peremptory strike to remove a

prospective juror whom the trial court should have excused for

cause.  175 Ariz. 262, 266, 855 P.2d 776, 780 (1993).  We granted

review to reexamine *Huerta*'s automatic reversal rule in light of

the United States Supreme Court's decision in *United States v.*

*Martinez-Salazar,* 528 U.S. 304 (2000),[1] and other recent

developments with respect to this issue.  We have jurisdiction

under Article 6, Section 5(3), of the Arizona Constitution, and

Arizona Revised Statutes ("A.R.S.") sections 13-4031 and -4032

(2001).

## I.

¶2      A jury convicted Robert Dwight Hickman of three counts of

sexual exploitation of a minor for downloading child pornography

from the Internet.  Hickman appealed raising several issues,

including whether the trial court committed reversible error by

failing to strike two potential jurors for cause, thereby forcing

him to exercise two of his peremptory strikes to remove the

venirepersons.

¶3      During *voir dire*, two venirepersons indicated that they

---

[1]  Hickman argues that the State failed to raise *Martinez-Salazar* at trial or on appeal, thus waiving the right to do so now. Although true, in the interests of judicial economy, we granted review to address this issue as it has been raised a number of times previously since *Martinez-Salazar, see, e.g., State v. Ibanez*, 201 Ariz. 56, 59-60, ¶¶ 11-14, 31 P.3d 830, 833-34 (App. 2001), and is an issue of statewide importance. *See Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984).

had serious reservations about serving on a jury in this case. One venireperson stated, "I'm not quite sure I can be fair with the emotions involved." A second venireperson stated that she would not be able to render a fair verdict. Hickman asked the trial court to strike the potential venirepersons, but the court denied the request. Hickman subsequently used two peremptory challenges to remove both from the panel and was convicted by a fair and impartial jury.

¶4 On appeal, citing *Huerta*, Hickman argued that the trial court's erroneous failure to remove the prospective jurors constituted an abuse of discretion and required automatic reversal. The court of appeals held that "[i]n light of [the venireperson's] unambiguous responses indicating that she would be biased and therefore unable to render a fair verdict, the trial court erred in refusing to strike her for cause."[2] *State v. Hickman*, 1 CA-CR 00-0215, 1 CA-CR 00-0542 (Consolidated), slip op. at ¶ 9 (Ariz. App. Oct. 25, 2001) (mem. decision). The court remanded the case for a new trial.

---

[2] The court of appeals found it unnecessary to determine whether there was error in failing to remove both venirepersons, as *Huerta* compels reversal for one error. *State v. Hickman*, 1 CA-CR 00-0215, 1 CA-CR 00-0542 (Consolidated), slip op. at ¶ 6 (Ariz. App. Oct. 25, 2001) (mem. decision).

## II.

### A.

¶5      In *Huerta*, a majority of this court held that a defendant's substantial right to peremptory challenges is violated when a trial judge erroneously denies a challenge to a juror for cause, regardless of whether the defendant was actually prejudiced. 175 Ariz. at 266, 855 P.2d at 780.  The majority reasoned that in most cases it is impossible for a party to show the effect of the trial judge's error upon the outcome of the trial.  *Id.*  It said the only certain thing is "the trial judge's error forces the party correctly challenging a juror for cause to waste a peremptory challenge, giving that party one less peremptory challenge than the other side."  *Id.*  Thus, the *Huerta* majority concluded that "[r]eversal is the only feasible way to vindicate a party's 'substantial right' to peremptory challenges."  *Id.*  Two justices dissented, contending that reversal should not be required in the absence of a showing of prejudice.  *Id.* at 269, 855 P.2d at 783 (Corcoran, J., dissenting); *id.* at 271, 855 P.2d at 785 (Martone, J., dissenting).

¶6      The question on review is whether we should continue to follow *Huerta*'s automatic reversal rule.  We conclude that in light of the Supreme Court's decision in *Martinez-Salazar* and the decisions of courts in other jurisdictions that overruled their similar automatic reversal rule, *Huerta* should be overruled.  We

-4-

begin our analysis by examining an earlier decision of the Court that foreshadowed the result reached in *Martinez-Salazar*.

**B.**

¶7      In *Ross v. Oklahoma*, the Court held that the Sixth and Fourteenth Amendments do not compel reversal when a state law requires a defendant to use a peremptory challenge to cure a trial court's erroneous denial of a challenge for cause. 487 U.S. 81, 88-89 (1988). The Oklahoma rule at issue in that case had been interpreted by the Oklahoma courts as requiring that a defendant use his peremptory challenges to cure the trial court's for-cause error. *Id*. at 89-90. If the defendant did not exercise a peremptory challenge to remove an erroneously retained juror, the defendant waived the right to argue that reversible error occurred. *Id*. at 89. The Court thus concluded Oklahoma intended that the number of peremptory challenges it chose to give a defendant included any peremptory challenges that a defendant might use to cure a trial court's error. *Id*. at 90-91. Because the defendant "received all [the peremptory challenges] that Oklahoma law allowed him," no error occurred. *Id*. at 91.[3]

---

[3]   Because Oklahoma law had long held that defendants were required to use their peremptory strikes to cure trial court errors on challenges for cause, the *Ross* court did not reach the issue of whether a defendant being forced to exercise a peremptory challenge to cure a trial court error, absent state law requiring him to do so, was a denial or impairment of his right to exercise peremptory challenges under state law. *Id*. at 91 n.4.

¶8      After *Ross*, most jurisdictions that considered the issue either rejected the automatic reversal rule or reaffirmed their jurisdiction's prior opinions that the curative use of a peremptory challenge was not reversible error, absent prejudice to the defendant. *See, e.g.*, *Pickens v. State,* 783 S.W.2d 341, 345 (Ark. 1993); *Dawson v. State*, 581 A.2d 1078, 1093-94 (Del. 1990), *vacated on other grounds by Dawson v. Delaware,* 503 U.S. 159 (1992); *Trotter v. State,* 576 So. 2d 691, 693 (Fla. 1990); *State v. Graham,* 780 P.2d 1103, 1108 n.3 (Haw. 1989); *People v. Gleasch,* 568 N.E.2d 348, 353 (Ill. 1991); *Vaughn v. State,* 559 N.E.2d 610, 614 (Ind. 1990); *State v. Neuendorf,* 509 N.W.2d 743, 747 (Iowa 1993); *Williams v. Commonwealth,* 829 S.W.2d 942, 943 (Ky. Ct. App. 1992); *Hunt v. State,* 583 A.2d 218, 233 (Md. 1990); *Mettetal v. State,* 602 So. 2d 864, 869 (Miss. 1992); *State v. DiFrisco*, 645 A.2d 734, 751-53 (N.J. 1994); *State v. Tranby,* 437 N.W.2d 817, 824 (N.D. 1989); *State v. Broom,* 533 N.E.2d 682, 695 (Ohio 1988); *State v. Green,* 392 S.E.2d 157, 160 (S.C. 1990); *State v. Middlebrooks,* 840 S.W.2d 317, 329 (Tenn. 1992); *State v. Menzies*, 889 P.2d 393, 398 (Utah 1994); *State v. Traylor,* 489 N.W.2d 626, 629 (Wis. Ct. App. 1992).

¶9      The *Huerta* majority, however, concluded that *Ross* was not controlling because "[o]ur earlier cases . . . are not bottomed on federal constitutional law, but upon state procedural law, which is established by a long line of Arizona authority."  175 Ariz. at 265, 855 P.2d at 779.   In examining our prior cases, the court

-6-

stated, "Arizona courts have long held that a litigant who is denied the full use of the allotted peremptory challenges is denied a substantial right, which requires reversal, even absent an independent showing of prejudice."  *Id.* at 263, 855 P.2d at 777.

## c.

¶10    In 2000, the Supreme Court in *Martinez-Salazar*, in examining Federal Rule of Criminal Procedure 24(b), held that an erroneous denial by the district court of a challenge for cause of a juror, followed by the defendant's use of a peremptory challenge to remove that juror, does not deprive the defendant of any "rule-based or constitutional right" if the defendant is subsequently convicted by an impartial jury.  528 U.S. at 307.  Specifically, the Court held the following:

> We . . . hold that a defendant's exercise of peremptory challenges . . . is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause. Martinez-Salazar and his co-defendant were accorded 11 peremptory challenges, the exact number . . . allowed.

*Id*. at 317.

¶11    The Court acknowledged the important role peremptory challenges play in "reinforcing a defendant's right to trial by an impartial jury."  *Id.* at 311.  However, the Court pointed out that "such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension."  *Id*. (citing *Ross,* 487

U.S. at 88; *Stillson v. United States*, 250 U.S. 583, 586 (1919)).

Thus, a defendant's exercise of a peremptory challenge to cure a trial court's error in denying a challenge for cause, without more, does not violate the constitutional right to an impartial jury. *Id.* at 313.

¶12 The Court, however, rejected the Government's argument that the federal rule should be construed to require that a defendant use a peremptory challenge to remove a juror the trial court should have struck for cause "to preserve the claim that the for-cause ruling impaired the defendant's right to a fair trial." *Id*. at 314. Instead, the Court concluded that "Martinez-Salazar had the option of letting [the venireperson] sit on the petit jury and, upon conviction, pursuing a Sixth Amendment challenge on appeal." *Id*. at 315. Martinez-Salazar made a strategic choice when he elected to remove the juror. *Id*. Martinez-Salazar's due process rights were not violated, because, in the Court's view, "[a] hard choice is not the same as no choice." *Id*.

¶13 In a concurring opinion, Justice Scalia, joined by Justice Kennedy, expressed reservations about the majority's conclusion that Martinez-Salazar could have opted to leave the challenged juror on the jury, and upon conviction, pursue a Sixth Amendment challenge on appeal. *Id*. at 318-19. He questioned whether the "normal principles of waiver" would not "disable a defendant from objecting on appeal to the seating of a juror he was

entirely able to prevent." *Id*. at 318. Because this question was not presented, he believed that the majority should not have addressed it. *Id*. at 319. Accordingly, *Martinez-Salazar* left open the question of whether a harmless error analysis would apply to a defendant's use of a peremptory challenge to cure a trial court's erroneous denial of a challenge for cause. *See* William T. Pizzi & Morris B. Hoffman, *Jury Selection Errors on Appeal*, 38 Am. Crim. L. Rev. 1391, 1403-06 (2001).

¶14     Despite the question left open by *Martinez-Salazar*, several state courts, citing *Martinez-Salazar*, have adopted the rule that, absent a showing of prejudice, a defendant's use of a peremptory challenge to cure a trial court's erroneous denial of a challenge for cause does not violate any right based on the state constitution, rule or statute. *See*, *e.g.*, *Green v. Maynard*, 564 S.E.2d 83, 86 (S.C. 2002); *State v. Verhoef*, 627 N.W.2d 437, 441-42 (S.D. 2001); *State v. Fire*, 34 P.3d 1218, 1225 (Wash. 2001); *State v. Lindell*, 629 N.W.2d 223, 250, ¶¶ 112-13 (Wis. 2001).

¶15     In *Verhoef*, the South Dakota Supreme Court held that *Martinez-Salazar* "clearly sets aside" prior case law that any federal constitutional right was denied when a defendant used a peremptory challenge to remove a juror the trial court should have struck for cause, thereby losing a peremptory challenge that could have been used on another juror. 627 N.W.2d at 441. The court further found no principled basis for interpreting state statutory

or constitutional provisions as granting broader rights than the United States Constitution. *Id*. at 442.

**¶16** *Fire* and *Lindell* both held that because the right to peremptory challenges is not a constitutional right, a defendant's curative use of a peremptory challenge should be reviewed for harmless error. *Fire,* 34 P.3d at 1222; *Lindell*, 629 N.W.2d at 250, ¶ 111.

**¶17** In *Fire*, the Washington Supreme Court acknowledged conflicting lines of Washington appellate cases on this issue. 34 P.3d at 1222. One line of cases held that even though no biased juror sat on a trial, "prejudice occurs in the deprivation of one peremptory challenge to which a defendant is entitled." *Id*. at 1222-23 (citing *State v. Stentz*, 70 P. 241 (Wash. 1902)). Another line of cases held that when a defendant uses a peremptory challenge to cure a trial court's error, a further showing of prejudice is needed before reversal is required. *Id.* Relying on *Martinez-Salazar*, the *Fire* court held that

> if a defendant through the use of a peremptory challenge elects to cure a trial court's error in not excusing a juror for cause, exhausts his peremptory challenges before the completion of jury selection, and is subsequently convicted by a jury on which no biased juror sat, he has not demonstrated prejudice, and reversal of his conviction is not warranted.

*Id*. at 1225.

**¶18** Similarly, the Wisconsin Supreme Court adopted *Martinez-Salazar* and overruled *State v. Ramos*, 564 N.W.2d 328 (Wis. 1997),

-10-

a case that had established a rule similar to *Huerta*'s. *Lindell,* 629 N.W.2d at 236, ¶ 53, 245, ¶¶ 91-93, 252, ¶ 120. In its discussion, the *Lindell* court stated the following: "Another disturbing element of the *Ramos* decision is that it requires a new trial in cases where the trial was nearly perfect and the verdict is unquestionably sound. Yet, we examine error in other situations - both statutory and constitutional - for harmful effect." 629 N.W.2d at 249, ¶ 107 (footnotes omitted).

**¶19** To be sure, a few courts have rejected *Martinez-Salazar*. *See, e.g., People v. Lefebre*, 5 P.3d 295, 307 (Colo. 2000) (rejecting both *Ross* and *Martinez-Salazar*, and holding that "[o]ur decisions have consistently recognized that, under Colorado law, a defendant suffers reversible prejudice if he is forced to use a peremptory challenge to remove a juror whom the trial court failed to remove for cause and he exhausts his peremptory challenges"); *Gamble v. Commonwealth,* 68 S.W.3d 367, 374 (Ky. 2002) (holding, without discussing *Martinez-Salazar*, that prejudice is presumed when a defendant is forced to exhaust his peremptory challenges against prospective jurors who should have been excused for cause); *Brown v. Commonwealth*, 533 S.E.2d 4, 8 n.2 (Va. Ct. App. 2000) (forcing a defendant to use a peremptory challenge to remove a juror the trial court should have struck for cause is prejudicial error because the defendant is denied his statutory right to exercise his full complement of peremptory strikes on a panel free

-11-

from members who should have been struck for cause).

¶20      Nevertheless, a majority of state courts, both before and after *Martinez-Salazar*, hold that the curative use of a peremptory challenge violates neither a constitutional right, nor a rule - based or statute - based right.  These courts require a showing of prejudice before a case will be reversed when a defendant uses a peremptory challenge to remove a juror the trial court should have excused for cause.

### III.

¶21      The question then becomes whether Arizona should join those states that have adopted the principles of *Ross* and *Martinez-Salazar*, and require a showing of prejudice before reversing an otherwise valid criminal conviction.  We conclude we should for two reasons.  First, requiring such a showing would be consistent with the early Arizona case law that addressed this issue.  Second, such a rule would be consistent with two provisions of our constitution and with Arizona's harmless error statute.  We first review the Arizona case law that examined a defendant's curative use of a peremptory challenge.

### A.

¶22      For more than fifty years this court consistently held that a trial court's erroneous denial of a challenge for cause was technical error, not subject to reversal in the absence of

prejudice to the defendant.[4]  The earliest case that addressed the issue was *Encinas v. State*, 26 Ariz. 24, 221 P. 232 (1923).  In that case, the defendant used five peremptory challenges to dismiss five potential jurors the trial court failed to dismiss for cause. *Id.* at 27, 221 P. at 233.  In rejecting the defendant's claim of error, the court stated:

> The important thing is that it does not appear that an objectionable juror was forced upon the defendant . . . . Even though the court may have erred in disallowing the five, or some of the five, challenges made by defendant for cause and urged on this appeal as erroneous, the record disclosing that the twelve jurors who served were not disqualified, such disallowances did not amount to prejudicial error, and would not warrant a reversal.

*Id.* at 29, 221 P. at 233 (citations and internal quotations omitted).  In reaching its conclusion, the court relied primarily on Arizona's constitutional harmless error provision, also known as the substantial justice provision.  *See* Ariz. Const. art. 6, § 22, *amended by* Ariz. Const. art. 6, § 27.[5]  That provision provides

---

[4]  The court also uniformly held that other errors in jury selection did not require reversal in the absence of prejudice. *See, e.g.*, *Sam v. State*, 33 Ariz. 383, 399, 265 P. 609, 615 (1928) (holding that a trial court's mistaken denial of a challenge to a jury panel because certain potential jurors were mistakenly not included in the venire was not reversible error because there was no showing of prejudice to the defendants); *Lawrence v. State*, 29 Ariz. 247, 256-57, 240 P. 863, 867 (1925) (holding that even though the jury list from which the petit jury was selected was improperly prepared in violation of the law, the conviction would not be reversed in the absence of a showing that the jury that decided the case was not fair and impartial).

[5] The provision was renumbered in 1960.  For convenience, in the rest of this opinion we will refer to the current section number.  The wording is the same.

-13-

that "[n]o cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." *Id.* The court also relied on the Revised Statutes of Arizona, Penal Code § 1170 (1913), which declared in part that no "criminal case shall be reversed for technical error in pleading or proceedings when upon the whole case it appears that substantial justice has been done."

¶23 Following *Encinas*, this court twice held that a trial court's erroneous ruling on whether a juror was qualified to sit was not grounds for reversal in the absence of prejudice to the defendant. In *Kinsey v. State*, the court held that "[t]he exclusion of a juror by the court, even though erroneous, is of itself never a ground for a reversal, for the defendant is not entitled to have his case tried by any particular juror, but merely by twelve who are properly qualified and impartial." 49 Ariz. 201, 209-10, 65 P.2d 1141, 1145 (1937). And, in *Conner v. State*, the court, citing Article 6, Section 27, held that the erroneous denial of a challenge for cause, and the defendant's subsequent use of a peremptory challenge to remove that juror, did not require reversal when a fair and impartial jury decided the case. 54 Ariz. 68, 74-75, 92 P.2d 524, 527 (1939). The court reasoned that if the jury is lawful, the defendant's constitutional right to a trial by an impartial jury has been satisfied, "even though some of the formal provisions of the law regarding the manner of their selection may

-14-

have been disregarded." *Id.* at 75, 92 P.2d at 527. The court concluded that the "defendant is not entitled to be tried by any particular jury, but merely by one which is fair and impartial." *Id.* Moreover, "formal rules of law regarding formation of a jury are intended to secure this kind of a jury, and have no other purpose." *Id.* at 74-75, 92 P.2d at 527.

## B.

¶24 The rule established by *Encinas, Kinsey,* and *Conner* was the rule until *Wasko v. Frankel*, 116 Ariz. 288, 569 P.2d 230 (1977). In a civil case, this court, for the first time, ruled that a party's use of a peremptory challenge to remove a juror the trial court should have removed for cause was reversible error even in the absence of prejudice. *Id*. at 290, 569 P.2d at 232. The court never mentioned *Encinas, Kinsey,* or *Conner.* Instead, the court relied upon a Utah case to justify its holding.

¶25 The case relied upon by the *Wasko* court, *Crawford v. Manning*, abandoned long-standing Utah precedent and established a new rule, without explaining why it was doing so and with very little analysis. 542 P.2d 1091, 1093 (Utah 1975). In that case, the Utah Supreme Court held that a defendant should not be compelled to "waste" a peremptory challenge to obtain a lawful jury, and that the refusal to strike a juror for cause was "prejudicial error" requiring automatic reversal. *Id.* However, in 1994, the Utah Supreme Court, citing *Ross*, overruled *Crawford* in

-15-

*State v. Menzies*, 889 P.2d at 398. The *Menzies* court held that "[t]o prevail on a claim of error based on the failure to remove a juror for cause, a defendant must demonstrate prejudice, [by] show[ing] that a member of the jury was partial or incompetent." *Id.*

¶26 The only Arizona cases cited by *Wasko* involved juries that were not lawfully constituted. In *State v. Thompson,* the defendant used peremptory challenges to strike three jurors, but because of an error by the court clerk, those jurors actually served on the jury that decided the case. 68 Ariz. 386, 389-91, 206 P.2d. 1037, 1038-40 (1949). The court acknowledged its prior rulings that a conviction would not be reversed for "mere technical errors or defects appearing in the record which do not affect the substantial rights of the accused." *Id*. at 390-91, 206 P.2d at 1040. But the court concluded that when a defendant is unlawfully deprived of the peremptory challenges he exercised, the defendant is deprived of a substantial right, and the jury that decided the case was unlawfully constituted. *Id*. at 391-92, 206 P.2d at 1040.[6] Hence, under such circumstances, a defendant is prejudiced because

---

[6] In reaching its conclusion, the court disapproved of an earlier decision, *Brough v. State*, 55 Ariz. 276, 101 P.2d 196 (1940), which held that a trial court's mistake in giving the defendant fewer peremptory challenges than the law allowed did not prejudice the defendant under the substantial justice provision. *State v. Thompson*, 68 Ariz. 386, 391-92, 206 P.2d 1037, 1040 (1949). The court, however, expressly acknowledged the continuing validity of *Kinsey* and *Conner*. *Id*.

"an objectionable juror was forced upon the defendant." *Encinas*, 26 Ariz. at 29, 221 P. at 233.

¶27    *Huerta* relied to a great extent on *Wasko* in applying the automatic reversal rule to criminal cases.  175 Ariz. at 265, 855 P.2d at 779.  But as discussed above, *Wasko* principally relied on a questionable Utah case, which was subsequently overruled in light of the Supreme Court's decision in *Ross*.  Consequently, the "long line of Arizona authority" relied upon by *Huerta*, 175 Ariz. at 265, 855 P.2d at 779, which was never very lengthy, no longer remains authoritative.

## c.

¶28    In light of these developments, we conclude the curative use of a peremptory challenge should be subject to harmless error review.  In other words, a defendant in a criminal case must show prejudice.  We base this conclusion on two factors.  First, most trial error, and even most constitutional error, is reviewed for harmless error.  Second, the Arizona Constitution and the Arizona harmless error statute obligate us to review trial error in criminal cases under a harmless error standard.

¶29    "[V]irtually any error, under particular circumstances, can be harmless."  *State v. Harrison,* 195 Ariz. 1, 6, ¶ 21, 985 P.2d 486, 491 (1999) (McGregor, J., dissenting).  As pointed out by the Wisconsin Supreme Court in *Lindell*, numerous instances exist in which constitutional violations are subject to harmless error

-17-

analysis:

> Improper comment on the defendant's failure to testify; admission of evidence obtained in violation of the Fourth Amendment; admission of evidence obtained in violation of an accused's right to counsel; admission at trial of an out-of-court statement of a non-testifying codefendant in violation of the Sixth Amendment's Confrontation Clause; admission of evidence at the sentencing stage of a capital case in violation of the right to counsel; erroneous use during trial of defendant's silence following Miranda warnings; a restriction on a defendant's right to cross-examine in violation of the Sixth Amendment's Confrontation Clause; denial of the right to present exculpatory evidence; denial of the right to be present during a trial proceeding; denial of an indigent's right to appointed counsel at a preliminary hearing; a jury instruction containing an unconstitutional rebuttable presumption; a jury instruction containing an unconstitutional conclusive presumption; an unconstitutionally overbroad jury instruction in a capital case; the submission of an invalid aggravating factor to the jury in a capital sentencing proceeding, and even a misdescription of an element of the offense.

*Lindell*, 629 N.W.2d at 249 n.16, ¶ 107 (quoting 5 Wayne R. LaFave, Criminal Procedure § 27.6(d) (2d ed. 1999)(footnotes omitted)). If important constitutional errors are subject to harmless error review, then, logically, a trial court's erroneous denial of a challenge for cause and the defendant's subsequent use of a peremptory challenge to cure that error should be subject to harmless error review.[7] *Cf. Rose v. Clark*, 478 U.S. 570, 579

---

[7] In contrast, structural errors require automatic reversal. *See, e.g., Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)(structural errors require reversal not because they implicate rights abstractly deserving of some greater degree of protection, but rather because those rights are so bound up with the reliability of the process that courts irrebuttably presume

(1986) ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis.").

¶30      Whether a particular error is amenable to harmless error analysis depends upon "two distinct, though related, principles: (1) is the error the kind of error that will likely affect the reliability of the truth-finding process; and (2) is the truth finding impact of the error incapable of rational assessment?" Pizzi & Hoffman, *supra* at 1424-25.  Curative use of a peremptory challenge helps ensure the reliability of the truth-finding function by excluding biased jurors.  If there is no effect on reliability, then it is irrelevant whether the "impact of the error [is] incapable of rational assessment." *Id.*

¶31      The *Huerta* majority declined to apply harmless error analysis for two reasons: (1) in most cases a defendant is unable to show the effect of the judge's erroneous ruling for cause; and (2) harmless error analysis would not adequately prevent erroneous rulings for cause.  175 Ariz. at 266, 855 P.2d at 780.  Neither reason withstands scrutiny.  First, when a defendant secures an

---

their violation had an effect on the outcome).  Such errors affect the "framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id*. at 310.  A defendant's use of a peremptory challenge to cure a trial court's erroneous denial of a challenge for cause is an error in the trial process, and not an error affecting the framework of how a trial proceeds.

-19-

impartial jury, even through the curative use of a peremptory challenge, a conviction by that jury will not have prejudiced that defendant. *See, e.g., State v. Entzi*, 615 N.W.2d 145, 149, ¶ 10 (N.D. 2000); *Fire*, 34 P.3d at 1222; *Lindell*, 629 N.W.2d at 250, ¶ 113. Therefore, whether the effect of a trial judge's erroneous ruling can be rationally assessed in such circumstances is immaterial. Second, given the reality of jury selection, there is no basis to support the belief that an automatic reversal rule has any direct impact on trial judges' rulings on challenges for cause. As pointed out by the Court in *Martinez-Salazar*, the reality is that "[t]rial courts, state and federal, rule on cause challenges by the minute," 528 U.S. at 310 (quoting *United States v. Martinez-Salazar*, 146 F.3d 653, 661 (9th Cir. 1998) (Ryhmer, J., dissenting)), "often [deciding] between shades of gray." *Id*. at 316. Given this reality, it seems incongruous that a defendant should receive a new trial simply because the trial judge made a mistake that had no impact on the reliability of the jury's verdict.

¶32 Arizona's constitution and harmless error statute also compel the conclusion that a trial court's error in failing to remove a juror for cause, and the defendant's subsequent use of a peremptory challenge to remove that juror, should be reviewed for harmless error. Article 2, Section 24 of our constitution grants a defendant the right "to have a speedy public trial by an

impartial jury." But, as discussed previously, our constitution also provides that "[n]o cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz. Const. art. 6, § 27. Moreover, Arizona statutory law requires courts to review error for prejudice. A.R.S. § 13-3987. This statute states that "[n]either a departure from the form or mode prescribed in respect to any pleadings or proceedings, nor an error or mistake therein, shall render the pleadings or proceedings invalid, unless it actually prejudiced, or tended to prejudice, the defendant in respect to a substantial right." *Id*. *Huerta* serves neither of these latter two provisions of our law.

¶33    Additionally, Arizona's constitution was amended in 1990 to include the Victims' Bill of Rights. That amendment guarantees, among other things, a victim's right to "a speedy trial or disposition and *prompt and final conclusion of the case after the conviction and sentence*." Ariz. Const. art. 2, § 2.1(A)(10) (emphasis added). In 1991, the Arizona Legislature adopted the Victims' Rights Implementation Act, A.R.S. §§ 13-4401 to -4437, affording crime victims the "basic rights of respect, protection, participation and healing of their ordeals." 1991 Ariz. Sess. Laws, ch. 229, § 2 (legislative intent). Clearly, the automatic reversal rule of *Huerta* thwarts a victim's constitutional and statutory right to a speedy resolution and finality.

-21-

¶34      Nevertheless, the *Huerta* majority believed that "[t]he prejudice of having one less peremptory challenge than the other side is enough to mandate reversal."  175 Ariz. at 267, 855 P.2d at 781.  This belief flowed from the supposition that "[t]he adversary system demands a level playing field to work properly."  *Id*. at 266, 855 P.2d at 780.  But given the reality of a trial court's rulings on challenges for cause, which are made by the minute and are clearly discretionary, the automatic reversal rule does not level the playing field.  Instead, it tilts the field in favor of the defendant.  To illustrate, consider a case in which a trial judge erroneously denies two challenges for cause, one requested by the State, the other, by the defendant.  Assuming both parties use a peremptory challenge to remove the objectionable jurors, each party will have exercised one less peremptory challenge than provided for by Rule 18.4(c) of the Arizona Rules of Criminal Procedure.  Although the parties exercised an equal number of peremptory challenges on jurors who were otherwise fair and impartial, under *Huerta*, the defendant would automatically receive a new trial.

¶35      Such a rule forces trial courts to retry cases previously decided by fair juries.  It is costly to the victims and to the judicial system, and it generates public cynicism and disrespect for the judicial system.

¶36     This case exemplifies the unnecessary cost to the system the *Huerta* rule creates.  Other than the issue we address here, Hickman raised three additional issues that the court of appeals found to be without merit.  Moreover, Hickman admitted to investigators that he had images of child pornography on his computer at work, his home computer, and on computer diskettes he had at home.  A new trial would be an exercise of form over substance; a new jury will reach the same result as the first.  The point of harmless error review is to avoid such incongruous consequences.

**IV.**

¶37     Respect for precedent demands "that we not lightly overrule precedent and we do so only for compelling reasons." *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 107, 859 P.2d 724, 730 (1993).  *Stare decisis* is a doctrine of persuasion, not a rigid requirement, but "any departure from the doctrine of *stare decisis* demands special justification." *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984).  While the phrase "special justification" defies simple definition, it does require more than that a prior case was wrongly decided.  *Hubbard v. United States,* 514 U.S. 695, 716 (1995) (Scalia, J., concurring).

¶38     The ease with which courts have abandoned precedent corresponds to the subject matter of the case at issue.  Cases may

be divided into three general categories: (1) statutory interpretation; (2) constitutional interpretation; and (3) rules created by the courts, such as procedural or evidentiary rules. *See Payne v. Tennessee*, 501 U.S. 808, 828 (1991). When a court proposes to abandon precedent in a case involving court-created rules, the burden of proof is lowest; in cases involving statutory interpretation the burden is highest. *Id.*; *Hedlund v. Sheldon,* 173 Ariz. 143, 144, 840 P.2d 1008, 1009 (1992). Court rules are expected to change with the times, and modifying them does not require as strong a showing as modifying substantive law. *Hedlund,* 173 Ariz. at 144, 840 P.2d at 1009.

¶39    We conclude that sufficiently compelling reasons exist for overruling *Huerta*. First, the *Huerta* rule is a creation of this court. Thus, the showing necessary to overrule it is not as strong as it would be for overruling a prior decision interpreting a statute. *Id*. Second, the rule created by *Huerta* is not the type of rule that generates reliance by participants in the criminal justice system. Rather it is a rule of fortuity. A trial judge may or may not err when ruling on a challenge for cause. Because a trial judge has the best opportunity to assess whether a juror can be fair and impartial, appellate courts review such decisions only for abuse of discretion. *State v. Hoskins*, 199 Ariz. 127, 139, ¶ 37, 14 P.3d 997, 1009 (2000). Given these circumstances, *Huerta*'s automatic reversal rule necessarily does not compel

-24-

reliance upon it. The *Huerta* rule is therefore unlike the sentencing rule discussed in *State v. Lara*, upon which "hundreds, if not thousands," of prior cases had relied. 171 Ariz. 282, 285, 830 P.2d 803, 806 (1992). Overruling *Huerta* rule will not cause an upheaval in criminal jurisprudence.

**¶40** Third, *Martinez-Salazar* clarified that peremptory challenges have an "auxiliary" role with respect to the Sixth Amendment right to a fair trial. Accordingly, as most jurisdictions have decided, the auxiliary right of a peremptory challenge should not be accorded the same weight as the constitutional right to a fair and impartial jury, which is the effect of the *Huerta* rule. *See, e.g.*, *Lindell*, 629 N.W.2d at 250, ¶ 108 (concluding automatic reversal rule with respect to the curative use of a peremptory challenge places this "'right' on a pedestal above others, and it is not worthy to be there"). Finally, as the South Dakota Supreme Court held, there is no principled basis for interpreting a court rule governing peremptory challenges more broadly than a federal constitutional right, "be it due process or Sixth Amendment trial rights." *Verhoef*, 627 N.W.2d at 441.

## V.

**¶41** The jury that decided Hickman's case was fair and impartial, and the record does not reflect that he exhausted his

-25-

peremptory challenges.  As a result, an objectionable juror was not forced upon him.  Therefore, we vacate that part of the court of appeals decision that reversed based on *Huerta.*  Because the court of appeals found no other error, Hickman's convictions and sentences are affirmed.

_____

Michael D. Ryan, Justice

CONCURRING:

_____

Ruth V. McGregor, Vice Chief Justice

_____

Rebecca White Berch, Justice

**J O N E S, Chief Justice, specially concurring:**

**¶42**      I write specially because of my past adherence to the rule in *State v. Huerta*, 175 Ariz. 262, 855 P.2d 776 (1993).  The automatic reversal required by *Huerta* has been followed by this court since 1993.  The rule had certain "bright line" attraction that gave trial judges clear direction.  But it has been a rigid rule, allowing virtually no latitude for non-prejudicial error in

jury selection and requiring retrial even in cases where the jury, as ultimately empaneled, meets the constitutional standard of impartiality and where substantial justice has nevertheless been served. The practice imposed an unnecessary strain on judicial resources. Yet, when *Huerta* was decided, it occurred to me that the rule would assure closer adherence to prerequisite constitutional standards.

¶43 In contrast, it is also true that courts among the several states have not been united on this question. Some have followed the rule of automatic reversal; others have not. More recently, the United States Supreme Court issued its opinion in *United States v. Martinez-Salazar,* 528 U.S. 304 (2000). The discussion and analysis of that case in today's principal opinion is adequate and need not be repeated here. Suffice it to say *Martinez-Salazar* appears sound as a jurisprudential matter in that reviewing courts need simply be satisfied that each petit jury meets the constitutional standard of impartiality, even where the defendant has exercised a peremptory challenge to correct the trial judge's erroneous refusal to dismiss a potential juror for cause.

¶44 Constitutional language guaranteeing the right to trial by an impartial jury is identical in both the federal and state constitutions. I see no reason to expand the right in state matters under the Arizona Constitution. It is acknowledged that

*Martinez-Salazar* does not answer all questions relating to the use of peremptory challenges where the judge erroneously refuses to strike for cause. Notwithstanding, the Supreme Court emphatically eschews the automatic reversal rule which this court adopted in *Huerta*. For these reasons, consistent with the rationale set forth in today's opinion, I join that opinion.

_____
Charles E. Jones, Chief Justice


NOTE: Justice Stanley G. Feldman sat for oral argument but retired prior to the filing of the opinion and therefore did not participate in the opinion.