959 So.2d 168 (2007)
William Michael KOPSHO, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-763.
Supreme Court of Florida.
May 24, 2007.
*169 James S. Purdy, Public Defender, and George D.E. Burden, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
William Michael Kopsho was indicted, tried, and convicted of armed kidnapping and first-degree murder of his wife, Lynne Kopsho. Kopsho appeals his judgments of conviction of first-degree murder and armed kidnapping and his sentence of death. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. Based on our determination that the trial court committed reversible error in the denial of a challenge for cause of a potential juror, we reverse the convictions and vacate the sentence.
Kopsho asserts that the trial court erred in denying defense counsel's challenge for cause against prospective juror David Mullinax. Kopsho argues that Mullinax should have been excused for cause based on his stated views regarding a defendant's right to remain silent. "Where an appellant claims he was wrongfully forced to exhaust his peremptory challenges *170 because the trial court erroneously denied a cause challenge, both error and prejudice must be established." Conde v. State, 860 So.2d 930, 941 (Fla.2003). Based on the record before us, we conclude that Kopsho has satisfied both prongs of that standard.

FOR-CAUSE CHALLENGE TO POTENTIAL JUROR MULLINAX
The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court. See Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). "In evaluating a juror's qualifications, the trial judge should evaluate all of the questions and answers posed to or received from the juror." Parker v. State, 641 So.2d 369, 373 (Fla.1994). A juror must be excused for cause if any reasonable doubt exists as to whether the juror possesses an impartial state of mind. See Bryant v. State, 656 So.2d 426, 428 (Fla.1995). The trial court has broad discretion in determining whether to grant a challenge for cause, and the decision will not be overturned on appeal absent manifest error. Overton v. State, 801 So.2d 877, 890 (Fla.2001).
The question before this Court is whether the trial court should have granted a cause challenge based on Mullinax's equivocal responses when he was asked if he could be impartial if Kopsho exercised his right not to testify. As noted in Busby v. State, 894 So.2d 88, 96 (Fla.2004), the mere fact that a juror gives equivocal responses does not disqualify that juror for service. The question is whether the juror's responses were sufficiently equivocal to generate a reasonable doubt about his fitness as a juror. Id.
During voir dire, the following exchange occurred between Mullinax and defense counsel:
MR. MILLER [defense counsel]:. . . .
Is there anyone on this panel who is going to have a difficult time returning a verdict in this case without hearing from my client?
JURY VOIR [D]IRE: (no response)
MR. MILLER: I mean, it's okay if you have a problem with that. Just because the law saysI am getting back to what I talked about earlier on.
This is an extremely important point. Just because the law says that you cannot presume anythingI am not telling you whether or not you are going to hear from Mr. Kopsho.
Again these are hypothetical questions. But if you did not, the Court is going to instruct you that you can't draw anything from that. That that is irrelevant. Should not come into your thinking.
My question is: Does anybody have a problem with that? Does anybody think that the law should be different?
MR. MULLINAX: I do. I think he should have to.
MR. MILLER: Okay.
MR. MULLINAX: I know the law is not that way, but I think so.
MR. MILLER: Now again, a more difficult, philosophical question. You know setting aside thoughts like that are tough to do. Can you do it?
MR. MULLINAX: I don't know.
MR. MILLER: You don't know?
MR. MULLINAX: Whether he is guilty or not, you have to stand before your maker. You are going to have to give an account for what you did here. That is what I think the law should be.
MR. MILLER: I understand that. And I respect that. You know that. I *171 told you, and I meant it. I want to hear what you really feel deep down in here. (indicating)
But what I am asking is: Is there a possibility feeling that way, you would not be able to set that aside and that you would have trouble deliberating this case and not considering that in deliberations if Mr. Kopsho chose not to testify?
You don't know? In other words, you are not sure?
MR. MULLINAX: I am not sure.
MR. MILLER: Okay.
MR. MULLINAX: But I would like to hear his side.
MR. MILLER: That is why I asked. No wrong answers. I respect that.
MR. HANSON [another venire person]: I agree.
MR. MULLINAX: Unless you have an eyewitness account, everything else is hearsay, according to the way I believe. It's all hearsay, unless you have a witness that saw him do it.
The only two people who knows what happened is him and the person who died, unless he can give an account that it did not happen or a way it happened.
Neither the State nor the trial court attempted to rehabilitate Mullinax after this exchange with defense counsel.
The defense moved to strike Mullinax for cause because Mullinax was not certain that he could deliberate impartially in the event that Kopsho chose not to testify. The trial court denied the motion, explaining:
THE COURT: At no time did [Mullinax] indicate that he would be anything other than fair and impartial. Actually, he couched his comment by saying: Unless you have eye witness statements that he killed someone, I would like to hear his side of the story. Correct me if I'm wrong counsel for the prosecution, but do you not have such statements?
MR. TATTI: Yes.
THE COURT: I recognize also, counsel for the prosecution, do you intend to introduce the videotaped statement on Mr. Kopsho after his arrest?
MR. TATTI: Yes.
THE COURT: In which case, Mr. Kopsho's version of events would also be before the jury. But I did not find his answers to indicate he would not be impartial. Accordingly the challenge for cause is denied.
Mullinax's equivocation regarding his ability to be impartial cannot be distinguished from the juror comments at issue in Overton v. State, 801 So.2d 877 (Fla. 2001). In Overton, this Court found that the trial court erred in refusing to dismiss for cause a juror who expressed his belief that the defendant should testify. Specifically, when questioned by defense counsel, juror Russell stated:
I always think if a person's innocent they should get up on that stand and speak for themselves. That's the way I believe. But also, I understand what the Judge said, too. It's like confusing to me. . . . But in all honesty, that's what I really believe. I believe a person should get up there and say, I didn't do this.
Id. at 890. Juror Russell was then further questioned by the trial court:
THE COURT: When we were out there in the open group there, you had some reservations about the Defendant's right to remain silent.
MR. RUSSELL: Yeah.
THE COURT: What if, as part of the evidence, you were not presented with testimony from the Defendant?

*172 MR. RUSSELL: Well, I willI will be able to follow your instruction without
THE COURT: meaning if I sit here and say he doesn't, the Defendant
MR. RUSSELL: If he doesn't testify and you say that he doesn't have to, then I respect that.
THE COURT: Not only doesn't he have to, but it can't be considered as evidence of guilt.
MR. RUSSELL: Right, I would right.
THE COURT: It cannot be used in any adverse way against him.
MR. RUSSELL: Right.
THE COURT: It cannot come into your deliberations whatsoever.
MR. RUSSELL: Right.
THE COURT: Yesterday you had reservations about that.
MR. RUSSELL: Well, that'sright, that's the way I always feel about it when someone doesn't take the stand, I figure they've got something to hide. That's the way I've always believed.
THE COURT: Right.
MR. RUSSELL: But I can shut that out. If you tell me to shut it out, I still shut it out.
Id. at 891 (emphasis deleted). This Court held that based on the totality of the juror's responses, the juror's assurance that he would be able to follow the law did not relieve doubt regarding his partiality. Id. at 892.
In light of this precedent and the record on appeal, we cannot agree with the trial judge's conclusion that "[a]t no time did [Mullinax] indicate that he would be anything other than fair and impartial." Like juror Russell in Overton, Mullinax expressed a belief that the law should require a defendant to testify. Most importantly, when asked if he could set aside his personal beliefs while deliberating, Mullinax repeatedly answered that he was not sure if he could disregard a defendant's decision not to testify. Mullinax never stated that he would be able to deliberate impartially if seated on Kopsho's jury were Kopsho to decide not to testify. Mullinax's consistently equivocal responses raise reasonable doubt about his fitness as a juror.
Furthermore, the trial judge's conclusion that there was no reasonable doubt regarding Mullinax's impartiality because the prosecution would be admitting Kopsho's taped statements is not a correct application of law. This Court has repeatedly held that the presumption of innocence is defeated if "a juror is taken upon a trial whose mind is in such condition that the accused must produce evidence of his innocence to avoid a conviction." Overton, 801 So.2d at 891 (quoting Singer v. State, 109 So.2d 7, 24 (Fla.1959) (quoting Powell v. State, 131 Fla. 254, 175 So. 213, 216 (1937))). Whether the defendant's "version of events" will ultimately be presented to the jury is immaterial. A prospective juror who cannot presume the defendant to be innocent until proven guilty is not qualified to sit as a juror.
In summary, the record reflects that Mullinax repeatedly admitted that he was not certain whether he could deliberate in an unbiased manner in this type of case. This record can support no other conclusion than that Mullinax should have been excused from the panel for cause. The trial court erred in denying the challenge for cause.

PREJUDICE
We also agree that defense counsel properly preserved this issue for review and demonstrated prejudice pursuant to this Court's decision in Busby v. State, 894 *173 So.2d 88 (Fla.2004). In Busby, a majority of the Court held:
[E]xpenditure of a peremptory challenge to cure the trial court's improper denial of a cause challenge constitutes reversible error if a defendant exhausts all remaining peremptory challenges and can show that an objectionable juror has served on the jury. See Trotter v. State, 576 So.2d 691 (Fla.1991). As explained in Trotter, "This juror must be an individual who actually sat on the jury and whom the defendant either challenged for cause or attempted to challenge peremptorily or otherwise objected to after his peremptory challenges had been exhausted." Id. at 693. A defendant cannot demonstrate prejudice if the trial court grants the same number of additional peremptories as cause challenges that were erroneously denied. See Conde, 860 So.2d at 942.
Busby, 894 So.2d at 96-97. In the instant case, defense counsel challenged juror Mullinax for cause. The trial judge denied this challenge. Later, defense counsel used a peremptory challenge to strike Mullinax. After exhausting all remaining peremptory challenges, defense counsel requested an additional peremptory, noting that the additional peremptory would be used to strike potential juror Bellet. The trial judge denied the defense's request for an additional peremptory. Defense counsel objected to this denial and reiterated that the additional peremptory would have been used to strike juror Bellet because of his answers about premeditation.[1] Bellet actually served on the jury. Accordingly, Kopsho has demonstrated that he was prejudiced by the trial court's erroneous denial of his challenge for cause against potential juror Mullinax.

CONCLUSION
For the reasons stated herein, the trial court erred in denying the defense's challenge for cause of potential juror Mullinax. This error requires a new trial because the trial court refused to grant a requested additional peremptory challenge and an objectionable juror actually served on the jury as a result of this denial. We therefore reverse Kopsho's conviction, vacate his sentence, and remand the case for a new trial consistent with this opinion.
It is so ordered.
LEWIS, C.J., and ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
BELL, J., concurs in result only with an opinion, in which WELLS and CANTERO, JJ, concur.
BELL, J., concurring in result only.
I agree that the trial judge erred in denying Kopsho's cause challenge to venire member Mullinax; however, Kopsho immediately corrected this error by electing to use one of his ten peremptory challenges to strike Mullinax from the panel. Consequently, the jury that rendered the verdict in this case was impartial. Given these undisputed facts, I again urge this Court to abandon the Trotter per se prejudice standard and to adopt the actual prejudice standard applied by both the federal courts and the vast majority of state courts.
In Busby v. State, 894 So.2d 88, 105-14 (Fla.2004) (Bell, J., concurring in part and dissenting in part), I explained in detail my *174 disagreement with this Court's continued adherence to the Trotter per se prejudice standard. Here, as in Busby, the majority applies the Trotter standard to overturn a verdict rendered by a constitutionally impartial jury. See Trotter v. State, 576 So.2d 691 (Fla.1991). I write again in this case to emphasize two points. First, I highlight how the majority's adherence to the Trotter per se prejudice standard ignores the curative purpose of peremptory challenges, a core reason behind the statutory grant of these challenges. Second, by citing to the most recent state supreme court decision on this issue, I reiterate my argument in Busby that this Court should join the ever-growing majority of states that have abandoned or rejected a per se prejudice standard in favor of the federal rule requiring a showing of actual prejudice. Under this actual prejudice standard, no reversible error occurred in Kopsho's trial because, as he concedes, no juror who decided his case was legally objectionable.

I. The Trotter Deficiency
The Trotter per se prejudice standard ignores the curative purpose of peremptory challenges. These challenges give all parties, including criminal defendants, the ability to correct improperly denied cause challenges at the trial level. When parties elect to use a peremptory challenge for this purpose, they immediately cure the trial judge's mistake, ensure that the trial is conducted before an impartial jury, and thereby alleviate the delay and expense of a retrial after appeal. In other words, peremptory challenges work in tandem with cause challenges to secure the constitutional right to trial by an impartial jury. See U.S. Const. amend. VI; art. I, §§ 16, 22, Fla. Const.; see also William T. Pizzi & Morris B. Hoffman, Jury Selection Errors On Appeal, 38 Am.Crim. L.Rev. 1391, 1406 (2001) (explaining that peremptory and cause challenges "compliment [sic] one another" in protecting the right to an impartial jury). The majority's continued adherence to the Trotter per se prejudice rule in criminal cases vitiates the curative purpose of peremptory challenges.
The failure of the Trotter standard to account for the curative purpose of peremptory challenges is amplified by the suggestion that trial courts can avoid reversal on appeal by granting extra peremptory challenges to cover any defense cause challenges that an appellate court may later decide were improperly denied. Majority op. at 173 (citing Busby, 894 So.2d at 97 ("A defendant cannot demonstrate prejudice if the trial court grants the same number of additional peremptories as cause challenges that were erroneously denied.")). This suggestion ignores two simple truths. Trial judges (1) do not knowingly err in denying cause challenges and (2) cannot divine the result of a future appellate decision on the issue. It also ignores the fact that the Trotter rule encourages counsel to "push the envelope" in voir dire by overasserting cause challenges, and when these challenges are denied, seeking extra peremptory challenges.
Lastly, my overarching concern is that the Trotter standard unnecessarily manufactures reversible error. The Trotter standard "[b]estow[s] a substantial right upon the exercise of a peremptory challenge," and "manufactures reversible error in cases where the case has been decided by a fair and impartial jury." Stopher v. Commonwealth, 57 S.W.3d 787, 814 (Ky.2001) (Keller, J., dissenting), quoted with approval in Morgan v. Commonwealth, 189 S.W.3d 99, 105 (Ky. 2006). Stated otherwise, the Trotter standard causes Florida courts to retry cases in which a defendant has suffered no actual prejudice because his constitutional right to an impartial jury was not violated. Such unnecessary reversals are *175 costly to the judicial system and provide a strong incentive to state legislators to cut down or eliminate peremptories. Busby, 894 So.2d at 114 (Bell, J., concurring in part and dissenting in part) (citing United States v. Annigoni, 96 F.3d 1132, 1150 (9th Cir.1996) (Kozinski, J., dissenting); State v. Hickman, 205 Ariz. 192, 68 P.3d 418, 426 (2003)).

II. The Majority Rule
To avoid the deficiencies in the Trotter per se prejudice standard, this Court should join the ever-growing majority of state courts that apply the federal actual prejudice rule and do not require reversal unless a legally objectionable[2] juror actually served on the jury.[3] In United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), the United States Supreme Court held that it was not reversible error when a defendant elected to cure the trial court's erroneous denial of his cause challenge against a potential juror. Id. at 317, 120 S.Ct. 774. The Court explained that " `peremptory challenges [to prospective jurors] are not of constitutional dimension,' [Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)]; rather, they are one means to achieve the constitutionally required end of an impartial jury." Id. at 307, 120 S.Ct. 774. "[S]uch challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." Id. at 311, 120 S.Ct. 774 (citing Ross, 487 U.S. at 88, 108 S.Ct. 2273). The Court reasoned that "a defendant's exercise of peremptory challenges . . . is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause. . . . Martinez-Salazar received precisely what federal law provided; he cannot tenably assert any violation of his Fifth Amendment right to due process." Id. at 317, 120 S.Ct. 774.
The Kentucky Supreme Court is the most recent state supreme court to abandon *176 the per se prejudice standard in favor of the federal actual prejudice standard. See Morgan v. Commonwealth, 189 S.W.3d 99 (Ky.2006) (overruling Thomas v. Commonwealth, 864 S.W.2d 252 (Ky.1993)). In analyzing the defendant's claim, the Kentucky Supreme Court distinguished substantial rights from procedural rights. Id. at 105. It determined that the right to a fair and impartial jury is a substantial right because it "is essential" and "potentially affects the outcome of a lawsuit" and "is capable of legal enforcement and protection." Id. (citing Black's Law Dictionary 1323-24 (7th ed.1999)). Conversely, the court viewed the right to peremptory challenges as a procedural right which "helps in the protection or enforcement of a substantial right," the right to a fair and impartial jury. Id.
I agree with the reasoning of the Kentucky Supreme Court. In the case sub judice, Kopsho received everything he was entitled to by constitution and by statute. The trial judge erred when he denied Kopsho's cause challenge against Mullinax, but "[s]uch mistakes are made by the best of judges in the fast-paced, contentious process of jury selection." Busby, 894 So.2d at 105-06 (Bell, J., concurring in part and dissenting in part). Kopsho received all ten peremptory challenges that he was entitled to under the peremptory challenge statute. He used one of these peremptory challenges to strike Mullinax. See § 913.08(1)(a), Fla. Stat. (2000). The fact that Kopsho chose to use one of his ten peremptory challenges for this curative purpose, a purpose for which the statutory right is granted, cannot reasonably be deemed a denial of that statutory right. Most importantly, as Kopsho concedes, his substantive, constitutional right to an impartial jury was not violated because none of the jurors who decided his case were biased or partial. Therefore, the procedure for selecting Kopsho's jury worked as intended. By working in tandem with challenges for cause, the statutorily granted peremptory challenges were employed to achieve the constitutional goal of obtaining an impartial jury. Given that Kopsho's constitutional right to trial by an impartial jury was preserved as intended, I again urge this Court to adopt the actual prejudice standard applied by the vast majority of other jurisdictions and to abandon the Trotter per se prejudice standard.
WELLS and CANTERO, JJ., concur.
NOTES
[1] When questioned by defense counsel, juror Bellet initially answered that he would "probably go with the death penalty" so long as the State proved premeditated first-degree murder. Later Bellet added "[u]nless there were mitigating circumstances that brought this on" and explained that he would want to know all the relevant circumstances before deciding if the death penalty was warranted.
[2] By "legally objectionable" I mean objectively biased or partial or otherwise removable for cause. See § 913.03, Fla. Stat. (2006).
[3] Examples of cases from other states which require a showing of prejudice include: Dailey v. State, 828 So.2d 340, 343-44 (Ala.2001); Minch v. State, 934 P.2d 764, 769-70 (Alaska Ct.App.1997); State v. Hickman, 205 Ariz. 192, 68 P.3d 418, 427 (2003); Bangs v. State, 338 Ark. 515, 998 S.W.2d 738, 744-45 (1999); People v. Yeoman, 31 Cal.4th 93, 2 Cal. Rptr.3d 186, 72 P.3d 1166, 1188 (2003); State v. Pelletier, 209 Conn. 564, 552 A.2d 805, 810 (1989); Manley v. State, 709 A.2d 643, 655-56 n. 15 (Del.1998); State v. Ramos, 119 Idaho 568, 808 P.2d 1313, 1314-15 (1991); Dye v. State, 717 N.E.2d 5, 18 n. 13 (Ind.1999); State v. Neuendorf, 509 N.W.2d 743, 746-47 (Iowa 1993); State v. Manning, 270 Kan. 674, 19 P.3d 84, 96-98 (2001); Morgan v. Commonwealth, 189 S.W.3d 99, 105-07 (Ky.2006); People v. Bell, 473 Mich. 275, 702 N.W.2d 128, 138-39 (2005); State v. Anderson, 603 N.W.2d 354, 355-56 (Minn.Ct.App.1999) (citing State v. Stufflebean, 329 N.W.2d 314, 317 (Minn.1983)); Johnson v. State, 754 So.2d 576, 577-78 (Miss.Ct.App.2000); State v. Storey, 40 S.W.3d 898, 904-05 (Mo.2001); State v. Quintana, 261 Neb. 38, 621 N.W.2d 121, 133-34 (2001); Blake v. State, 121 Nev. 779, 121 P.3d 567, 577-78 (2005); State v. DiFrisco, 137 N.J. 434, 645 A.2d 734, 751-54 (1994); State v. Entzi, 615 N.W.2d 145, 148-50 (N.D.2000); Myers v. State, 17 P.3d 1021, 1026-28 (Okla.Crim.App.2000), overruled on other grounds by James v. State, 152 P.3d 255 (Okla.Crim.App.2007); State v. Barone, 328 Or. 68, 969 P.2d 1013, 1018-19 (1998); Green v. Maynard, 349 S.C. 535, 564 S.E.2d 83, 84-87 (2002); State v. Verhoef, 627 N.W.2d 437, 440-42 (S.D.2001); State v. Middlebrooks, 840 S.W.2d 317, 329 (Tenn.1992), superseded on other grounds by Tenn.Code Ann. § 39-13-204(i)(h), (1995); State v. Menzies, 889 P.2d 393, 397-400 (Utah 1994); State v. Fire, 145 Wash.2d 152, 34 P.3d 1218, 1221-25 (2001); State v. Lindell, 245 Wis.2d 689, 629 N.W.2d 223, 243-46 (2001); Klahn v. State, 96 P.3d 472, 480-84 (Wyo.2004).