SUAREZ, J.
 

 Jorge Tabares (“Tabares”) appeals from a judgment and sentence claiming that the trial court erred in denying his motion to strike five (5) jurors for cause. Because the record does not support the trial
 
 *1207
 
 court’s decision to deny the challenges for cause, we reverse and remand for a new trial.
 

 Tabares was charged with three counts of grand theft and one count of organized scheme to defraud. After a jury trial, the jury returned a verdict of guilty as charged of one count of grand theft, and not guilty of the remaining counts of grand theft and organized scheme to defraud.
 

 During jury selection, the State and defense questioned, among others, venireper-sons identified as numbers 2, 7, 8, 9, and 11. Once questioning of jurors had been completed, defense counsel challenged the five (5) aforementioned prospective jurors for cause. The trial court denied each request. Defense counsel was then forced to use his peremptory challenges to excuse the five (5) jurors challenged for cause. Defense counsel requested three (3) additional peremptory challenges. The trial court granted defense counsel two (2) additional peremptory challenges. Defense counsel wanted to use the third additional peremptory against Juror Suarez. Since the trial court denied defense counsel’s request, Juror Suarez was seated on the jury.
 

 “Where an appellant claims he was wrongfully forced to exhaust his peremptory challenges because the trial court erroneously denied a cause challenge, both error and prejudice must be established.”
 
 Kopsho v. State,
 
 959 So.2d 168, 169-70 (Fla.2007). Based on the record before us, we conclude that Tabares has satisfied both prongs of that standard as to all five jurors in question. On appeal the State concedes that Juror Guise, juror No. 11, should have been stricken for cause. We agree with Tabares that the other four jurors, Michelson, Mutter, Perez, and Hodges, should have also been stricken for cause.
 

 The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court.
 
 See Lusk v. State,
 
 446 So.2d 1038, 1041 (Fla.1984). “In evaluating a juror’s qualifications, the trial judge should evaluate all of the questions and answers posed to or received from the juror.”
 
 Parker v. State,
 
 641 So.2d 369, 373 (Fla.1994). A juror must be excused for cause if any reasonable doubt exists as to whether the juror possesses an impartial state of mind.
 
 See Bryant v. State,
 
 656 So.2d 426, 428 (Fla.1995). Further, as noted in
 
 Busby v. State,
 
 894 So.2d 88, 96 (Fla.2004), the mere fact that a juror gives equivocal responses does not disqualify that juror for service. The question is whether the juror’s responses were sufficiently equivocal to generate a reasonable doubt about his fitness as a juror. Prospective jurors Miehel-son’s, Mutter’s, Perez’s and Hodges’ answers were sufficiently equivocal on the questions of whether each could presume Tabares innocent until proven guilty to generate a reasonable doubt about the fitness of each to serve as a juror.
 
 See Overton v. State,
 
 801 So.2d 877, 891 (Fla.2001) (holding that the presumption of innocence is defeated if “a juror is taken upon a trial whose mind is in such condition that the accused must produce evidence of his innocence to avoid a conviction”);
 
 Kopsho,
 
 959 So.2d at 172 (finding that a prospective juror who cannot presume the defendant to be innocent until proven guilty is not qualified to sit as a juror). None of these five prospective jurors was rehabilitated by either the prosecutor or the judge.
 
 See Conde v. State,
 
 860 So.2d 930, 941 (Fla.2003) (finding that where a prospective juror’s answers suggest incompetency to be a juror, rehabilitation by the prosecutor or judge is the proper next step).
 

 
 *1208
 
 For-Cause Challenge to Potential Juror Michelson (Juror No. 8)
 

 The voir dire as to potential Juror Michelson proceeded as follows:
 

 THE COURT: And if you’re picked as a juror, can you be fair and impartial to both the State and the defense?
 

 MR. MICHELSON:
 
 I believe so.
 

 MR. WINSTON: Anybody have a similar story about their impact, their interaction with the Court or a prosecutors or defense lawyers or police officers or anybody?
 

 MR. MICHELSON: I think a lot of people are frustrated by what is perceived to be the revolving door of justice.
 

 MR. WINSTON: Okay. A lot of people may be. How about you specifically?
 

 MR. MICHELSON: Absolutely.
 

 MR. WINSTON: Will that frustration prevent you from being fair in this particular case.
 

 MR. MICHELSON:
 
 I don’t think
 
 so, but still it’s a frustration.
 

 MR. WINSTON: Okay. Will you focus on the evidence here, or are you going to focus on the frustration?
 

 MR. MICHELSON: It’s a toughy.
 
 I will try
 
 and focus on the evidence, but still there is a certain level of frustration. I mean the wheels grind very slowly.
 

 MRS. HOROVITZ: Mr. Michelson, I believe you said, I believe so when the judge asked. Was that a term of art, or is there something that you think might prevent you from being fair to either the State or the defense?
 

 MR. MICHELSON: Well, there is a presumption because of the circumstances.
 

 MRS. HOROVITZ: Okay. Do you mean the presumption of innocence?
 

 MR. MICHELSON: Not necessarily.
 

 MRS. HOROVITZ: Does anyone agree with Mr. Ortiz? That Mr. Tabares did something. He must have or he wouldn’t be there if he didn’t do anything wrong. And we have to show you that he’s innocent.... Anyone else? Mr. Michelson.
 

 MR. MICHELSON: It’s not an unreasonable thought.
 

 MRS. HOROVITZ: Okay. And do you think that you’ll be able to get rid of that if you’re picked as a juror?
 

 MR. MICHELSON:
 
 I can only do the best I can do.
 

 MRS. HOROVITZ: But you’re not sure that you can get rid of that.
 

 MR. MICHELSON: It’s just the way that the scene is laid out.
 

 MRS. HOROVITZ: Okay. When you said that you do agree, does that mean that you’re going to have a harder time believing him because he’s on trial, and he’s being accused? ... Is there anyone else?
 

 MR. MICHELSON: I don’t disagree with the thought.
 

 MRS. HOROVITZ: You don’t disagree. So you may have a hard time believing Mr. Tabares based on the position that he has?
 

 MR. MICHELSON:
 
 I may
 
 have a hard time believing him whether he voluntarily testifies or not, believing the side.
 

 (Emphasis added).
 

 Here, prospective Juror Michelson indicated that he would
 
 try
 
 to focus on the evidence. Furthermore, he did not disagree with the thought that because Ta-bares was on trial, he would say anything he could in order to get out of trouble. Michelson never stated that he would be able to deliberate impartially if seated on Tabares’s jury. Neither the State nor the trial court attempted to rehabilitate Mi
 
 *1209
 
 chelson after this exchange. Michelson’s consistent equivocal responses, therefore, raised reasonable doubt about his fitness as a juror.
 

 For-Cause Challenge to Potential Juror Mutter (Juror No. 2)
 

 The voir dire as to potential Juror Mutter proceeded as follows:
 

 MRS. HOROVITZ: Does anyone agree with Mr. Ortiz? That Mr. Tabares did something. He must have or he wouldn’t be there if he didn’t do anything wrong. And we have to show you that he’s innocent. Ms. Mutter, you agree that?
 

 MS. MUTTER:
 
 Most likely, yes.
 

 MRS. HOROVITZ: You’re thinking, if he doesn’t tell his side of the story, he’s probably guilty; is that right? ... Ms. Mutter, are you thinking that?
 

 MS. MUTTER: Yes.
 

 MRS. HOROVITZ: Are you going to judge him differently as far as whether you believe him than you would the State’s witness or some other witness?
 

 MS. MUTTER: No.
 

 MRS. HOROVITZ: You’re not going to look at him any differently?
 

 MS. MUTTER: No,
 
 I don’t think so.
 

 MRS. HOROVITZ: Okay. When you said that you do agree, does that mean that you’re going to have a harder time believing him because he’s on trial, and he’s being accused?
 

 MS. MUTTER: Yes.
 

 (Emphasis added).
 

 Here, prospective Juror Mutter agreed with the idea that Tabares did something illegal, otherwise he would not be on trial. Mutter opined that if Tabares did not tell his side of the story, he was probably guilty. She also indicated that she would have a harder time believing Tabares because he was on trial. Mutter never stated that she would be able to deliberate impartially if seated on Tabares’ jury. Neither the State nor the trial court attempted to rehabilitate Mutter after this exchange. Mutter’s consistent equivocal responses, therefore, raised reasonable doubt about her fitness as a juror.
 

 For-Cause Challenge to Potential Juror Perez (Juror No. 7)
 

 The voir dire as to potential Juror Perez proceeded as follows:
 

 MRS. HOROVITZ: Okay. Is there anyone that agrees with Ms. Guise and Mr. Ortiz that you’re not going to be able to believe Mr. Tabares because he is on trial and will say whatever he needs to? Mr. Perez do you agree with that?
 

 MR. TRUJILLO-PEREZ: (No verbal response.)
 

 MRS. HOROVITZ: Yes, you do?
 

 MR. TRUJILLO-PEREZ: Yes.
 

 MRS. HOROVITZ: When you said that you do agree, does that mean that you’re going to have a harder time believing him because he’s on trial, and he’s being accused? ... Is there anyone else
 
 because Mr. Perez didn’t raise his hand, but I asked him directly and he agreed.
 

 (Emphasis added).
 

 Here, prospective juror Perez agreed with the idea that since Tabares was on trial, he would say anything he could in order to not be convicted. The State asked Perez directly if he was going to have a harder time believing Tabares because he was on trial, and Perez answered in the affirmative. Perez never stated that he would be able to deliberate impartially if seated on Tabares’ jury. Neither the State nor the trial court attempted to rehabilitate Perez after this exchange. Perez’s consistent equivocal responses, therefore, raised reasonable doubt about his fitness as a juror.
 

 
 *1210
 
 For-Cause Challenge to Potential Juror Hodges (Juror No. 9)
 

 The voir dire as to potential Juror Hodges proceeded as follows:
 

 MRS. HOROVITZ: So there’s no way a case with an innocent person would go to trial. Is there anyone who thinks that?
 

 MR. HODGES: Even if you are guilty, and you know that you left yourself enough space to get off on it, why would you just go right ahead and say that you’re guilty?
 

 MRS. HOROVITZ: When you say, “you left yourself enough space get to off on it,” what do you mean?
 

 MR. HODGES: You know that there’s enough against you, then you should know that you could probably get out of it. So even if you know and the State knows that you’re guilty and you just say, Well, I’m not guilty because I know that you don’t have enough proof, then you end up here.
 

 MRS. HOROVITZ: So for some people, you’re saying that they may not be accepting an offer from the State to close out their case because they don’t think they can prove it?
 

 MR. HODGES: Right.
 

 MRS. HOROVITZ: Okay. Do you agree though that there are people that take a case to trial not because of what you’re saying but because of they are actually innocent?
 

 MR. HODGES: There are plenty of people who are innocent. But at the same time there is half as much as that is guilty, and they just can’t get off on it.
 

 Here, prospective Juror Hodges indicated that he did not believe that an innocent person would go to trial. Hodges never affirmatively stated that he would be able to deliberate impartially if seated on Ta-bares’ jury. Neither the State nor the trial court attempted to rehabilitate Hodges after this exchange. Hodges’ consistent equivocal responses, therefore, raised reasonable doubt about his fitness as a juror.
 

 We conclude that the five (5) for cause challenges for Jurors Michelson, Mutter, Perez, Hodges, and Guise should have been granted. Each of their answers as to presumption of innocence was sufficiently equivocal to generate a reasonable doubt about his fitness as a juror. That being so, defense counsel only received two (2) additional peremptories and thus has demonstrated prejudice. “A defendant cannot demonstrate prejudice if the trial court grants the same number of additional peremptories as cause challenges that were erroneously denied.”
 
 Kopsho,
 
 959 So.2d at 173. It has also been held to be reversible error when a court forces a party to use peremptory challenges on prospective jurors who should have been excused for cause, provided the party has subsequently exhausted all of her peremptory challenges, and an additional challenge is sought and denied.
 
 See Joseph v. State,
 
 983 So.2d 781 (Fla. 4th DCA 2008);
 
 see also Shannon v. State,
 
 770 So.2d 714, 716 (Fla. 4th DCA 2000) (finding that it was not necessary to explain why a prospective juror for whom the additional peremptory challenge was sought was objectionable; they must merely identify that individual as objectionable).
 

 Because there is reasonable doubt as to the impartiality of juror Michelson, Mutter, Perez, Hodges and Guise, the denial of the for-cause challenges and subsequent denial of Tabares’ motion for an additional peremptory challenge to strike an identified juror were reversible error. This error requires a new trial because the trial court refused to grant a requested additional peremptory challenge and an objectionable juror actually served on the jury
 
 *1211
 
 as a result of this denial. We therefore reverse and remand for new trial.
 

 Reversed and remanded.